■ EAGLE COMTRONICS, INC., Appellant, v PICO, INC. (PRODUCT IDENTIFICA-TION COMPANY, INC.), et al., Respondents. — Order and judgment unanimously affirmed, with costs. Motion granted to strike material from respondents' appendix. Memorandum: Plaintiff Eagle Comtronics, Inc. (Eagle) appeals from a judgment dismissing its complaint and awarding damages to defendant Pico, Inc. (Pico) upon its counterclaim. Essentially, the complaint charged defen-dants with wrongful appropriation of trade secrets and breach of an express covenant not to compete. It sought, *inter alia*, a permanent injunction restrain-ing defendants from manufacturing and selling devices known, respectively, as a trap and an interference filter, both of which are used in the cable television industry to insure that only qualified subscribers are able to view optional channels. Eagle was incorporated in 1975 after its three principals had developed a two-pole trap. Thereafter Eagle commenced negotiations with Pico, a manufacturer of printed circuit boards, for the manufacture and marketing of the traps. Although the negotiations did not result in a signed contract, the parties agree that their business arrangement was to be con-ducted substantially in accord with an unsigned document entitled "EAGLE COM-TRONICS PROPOSAL FOR JOINT VENTURE" which was drafted in November, 1975 by defendant Bernard K. Hitchcock, president of Pico. Pursuant to that writing, Pico was to manufacture the traps and Eagle was to be responsible for engineering and marketing. Pico was to report its costs to Eagle on a monthly basis, and from sales made by Eagle, Pico was to be reimbursed its manufac-turing expenses and was to receive one half of the profits. The writing further provided: "4. PICO and its employees would agree not to compete without disclosure and written permission from Eagle Com-Tronics on the above referenced product line. 5. PICO and Eagle Com-Tronics would agree to disclo-sure on new findings in engineering or manufacture of the above referenced items." The traps were manufactured by both Eagle and Pico until April, 1976 when Pico became the sole manufacturer. In 1976 Eagle improved the design of the trap, changing it from a two-pole trap to a three-pole trap; it also completed the design of an interference filter but asserted at trial that it did not disclose the design to Pico. During 1976, differences between Eagle and Pico arose as a result of Eagle's failure to pay to Pico its share of moneys received from sales. These differences were never resolved, and Eagle termi-nated its business arrangement with Pico on December 12, 1976, by removing all of its property, including designs and drawings, from the Pico plant. Thereafter Pico, on its own, manufactured and marketed not only three-pole traps but also interference filters. Eagle commenced this action on December 31, 1976 and Pico counterclaimed for amounts due it from sales made by Eagle. After a Bench trial, the court dismissed the complaint and awarded judgment to Pico totaling $142,130.36. We affirm. Eagle concedes that the devices are not unique and therefore are not patentable. It argues, however, that the technology and the manufacturing process of the traps and interference filters are trade secrets. While it is true that one is entitled to protection against the wrongful appropriation of trade secrets (*Sybron Corp. v Wetzel*, 46 NY2d 197), these devices may not be so characterized. To the extent relevant here, a trade secret is defined as any device "which is used in one's business, and which gives him an opportunity to obtain an advantage over competitors who do not know or use it" (4 Restatement, Torts, § 757, comment *b*). Six factors are to be considered in determining whether a trade secret exists: "(1) the extent to which the information is known outside of his business; (2) the extent to which it is known by employees and others involved in his business; (3) the extent of

measures taken by him to guard the secrecy of the information; (4) the value of the information to him and to his competitors; (5) the amount of effort or money expended by him in developing the information; (6) the ease or difficulty with which the information could be properly acquired or duplicated by others." (4 Restatement, Torts, § 757, comment *b*.) There was substantial evidence at trial that the mechanical aspects of the trap were not secret, nor was the circuitry unusual or difficult to formulate. The proof demonstrated that any secrecy in the design of the trap was lost when it was placed upon the market; that the design of the trap could be easily acquired and copied; that in its efforts to promote sales, Eagle openly displayed cut-away samples of the trap and disclosed its electronic characteristics to competitors at trade shows; and that the effort and amount of money expended by the Eagle principals in developing the trap was not very great. Thus the trial court's finding that the trap could easily be duplicated finds ample support in the record. The interference filter is a device very similar to the trap, and despite Eagle's proof that it had not disclosed information about the interference filter to Pico, it is clear that the interference filter could easily be copied by others without using improper means. Furthermore, we note the agreement of the parties that if the business arrangement between Eagle and Pico was a joint venture, both would have the right to produce and market the devices without regard to whether they were trade secrets. We agree with the trial court's determination that the business relationship was a joint venture (see Partnership Law, §§ 10, 11). That the unsigned writing did not provide for the sharing of losses does not change that result (see *Forman v Lumm,* 214 App Div 569). Nor is there any merit to Eagle's claim that it was the intention of the parties that the covenant not to compete, contained in paragraph "4" of the proposal, should survive the termination of the business relationship. The parties agree that it is their intention which is determinative of this issue (see *Haines v City of New York,* 41 NY2d 769), and fully supported in the record is the trial court's finding that the covenant not to compete would be binding only during the existence of the parties' business relationship. Additionally, Eagle, as the party benefiting from the covenant, is not entitled to its enforcement since Eagle was the party first breaching the agreement (*Cornell v T. V. Dev. Corp.,* 17 NY2d 69), and the trial court's findings in that regard are fully supported. Thus viewed, it is unnecessary to consider when a covenant not to compete, silent as to its duration, will be held to survive the business relationship, or for how long it should survive (cf. *Mohawk Maintenance Co. v Kessler,* 52 NY2d 276; *American Broadcasting Cos. v Wolf,* 52 NY2d 394; *Reed, Roberts Assoc. v Strauman,* 40 NY2d 303; *Karpinski v Ingrasci,* 28 NY2d 45). (Appeal from order and judgment of Supreme Court, Onondaga County, Tenney, J. — breach of contract.) Present — Dillon, P. J., Callahan, Boomer, Moule and Schnepp, JJ.