920 F.2d 171
 17 U.S.P.Q.2d 1054
 INTEGRATED CASH MANAGEMENT SERVICES, INC., and Cash
Management Corporation, Plaintiffs-Appellees,
v.
DIGITAL TRANSACTIONS, INC., Nicholas C. Mitsos, Alfred Sims
Newlin, and Behrouz Vafa, Defendants-Appellants.
 No. 1459, Docket 89-9213.
 United States Court of Appeals,
Second Circuit.
 Argued Aug. 17, 1990.
Decided Dec. 4, 1990.
 
 Peter L. Berger, New York City (Thomas M. Furth, Levisohn, Lerner & Berger, New York City, of counsel), for plaintiffs-appellees.
 James E. Mahoney, Chicago, Ill. (Griffith & Jacobson, Chicago, Ill., of counsel), for defendants-appellants.
 Before MINER and ALTIMARI, Circuit Judges, and KELLEHER, District Judge.*
 ALTIMARI, Circuit Judge:
 
 
 1
 The central question presented by this appeal is whether trade secret protection extends to the manner in which several non-secret utility programs are arranged to create a computer software product. Defendants-appellants Digital Transactions, Inc. ("DTI"), Nicholas C. Mitsos, Alfred Sims Newlin, and Behrouz Vafa appeal from a judgment, entered in the United States District Court for the Southern District of New York (Robert J. Ward, Judge ), enjoining their use and distribution of this software product. Integrated Cash Management Serv., Inc. v. Digital Transactions, Inc., 732 F.Supp. 370 (S.D.N.Y.1989).
 
 
 2
 On this appeal, DTI and the individual defendants contend that the district court erred in extending trade secret protection to the combination of utility programs comprising the product. They also contend that the district court improperly enjoined Vafa and Newlin from employing their general skills and experience in the development of DTI programs. Finally, the defendants urge that the perpetual injunction against DTI's distribution of certain programs in existence as of the date of decision is unfairly restrictive.
 
 
 3
 For the reasons set forth below, we affirm the judgment of the district court.
 
 BACKGROUND
 
 4
 Plaintiffs-appellees Integrated Cash Management Services, Inc. and Cash Management Corporation (collectively, "ICM") design and develop computer software. ICM's programs are marketed to banks which, in turn, market the programs to the financial and treasury departments of various corporations. ICM develops generic programs which are readily customized to suit a particular client's specifications. It invests millions of dollars in the research and development of these generic programs and in structuring these programs to create its software product.
 
 
 5
 The ICM programs at issue in the present case are: SEUNIMNT, a generic universal database management system; Telefon, a generic communications program; Menu System/Driver, a treasury work station program; and Report Writer, a financial report customizing program. ICM claims to employ a "winning combination" of these generic programs which, it argues, deserves protection as a trade secret.
 
 
 6
 Individual defendants Mitsos, Newlin, and Vafa each worked for ICM. Mitsos was employed by ICM as an independent contractor at various times between 1981 and 1986. He worked primarily in ICM's marketing area and lacks advanced skills in computer science or programming. Mitsos left ICM in September 1986. Alfred Sims Newlin was employed by ICM as a computer programmer between September 1984 and March 1987. While an ICM employee, Newlin wrote the Communications and Menu modules of the ICM system. He also assisted in writing the SEUNIMNT program in the computer language called "C" and in writing an initial version of the Report Writer module for ICM. Behrouz Vafa was employed by ICM as a computer programmer between June 1986 and March 1987. Vafa's projects as an ICM employee included writing, with Newlin's assistance, the "C" language version of SEUNIMNT. Vafa also collaborated with Newlin and others in the early stages of creating Report Writer. For both Newlin and Vafa, working at ICM was their first full-time position after completing graduate degrees. Both Newlin and Vafa signed nondisclosure agreements with ICM in which they agreed not to disclose or use any confidential or proprietary information of ICM upon leaving the company's employ.
 
 
 7
 Newlin and Vafa left ICM on March 13, 1987 and began working at DTI three days later. Before leaving ICM, Newlin copied certain ICM files onto a personal diskette. He took that diskette with him without informing ICM. Vafa also left ICM with a copy of source code he had written for ICM. He later destroyed that file, however, because of personal doubts about the propriety of using the code at DTI. While the district court found no proof that the copied files were directly used at DTI, it was troubled by "the rather cavalier way in which the defendants treated their secrecy and nondisclosure obligations toward ICM." Integrated Cash Management, 732 F.Supp. at 375.
 
 
 8
 Within two weeks of the individual defendants' commencement of work at DTI, it had created a prototype database manager program. This program, and other generic programs subsequently produced for DTI by Newlin and Vafa, were found by the district court to "operate in substantially the same manner as comparable ICM generic programs." Id. The products developed by DTI were similar to those produced by ICM in both the design of component utilities and in overall structure or "architecture." Id. at 377.
 
 
 9
 ICM initiated this litigation against DTI and the individual defendants, alleging trade secret misappropriation and copyright infringement. Defendants responded with several counterclaims, including alleged unfair competition, antitrust violations, and breach of contract. On ICM's motion, the district court severed the issues of defendants' liability on ICM's claims from all other issues. A bench trial on the ICM claims was then conducted from October 16, 1989 to October 25, 1989. At the conclusion of trial, ICM withdrew its copyright infringement claim and its claims for damages. The district court found that DTI and the individual defendants had misappropriated trade secrets from ICM and had used the secrets in developing DTI's computer programs. Accordingly, it enjoined, for a period of six months, the defendants from utilizing as part of DTI's systems any version of the four utility programs found to include misappropriated trade secrets. Individual defendants Vafa and Newlin were also enjoined, for a six month period, from contributing to the creation of any new programs embodying these four utility programs. Also, the defendants were permanently enjoined from distributing any DTI versions of the four utility programs in existence as of the date of decision. The judgment permitted defendants' internal use of any program in connection with its business operations. This appeal followed.
 
 DISCUSSION
 
 10
 I. ICM's Trade Secret.
 
 
 11
 A plaintiff claiming misappropriation of a trade secret must prove: "(1) it possessed a trade secret, and (2) defendant is using that trade secret in breach of an agreement, confidence, or duty, or as a result of discovery by improper means." Rapco Foam, Inc. v. Scientific Applications, Inc., 479 F.Supp. 1027, 1029 (S.D.N.Y.1979); see Hurst v. Hughes Tool Co., 634 F.2d 895, 896 (5th Cir.), cert. denied, 454 U.S. 829, 102 S.Ct. 123, 70 L.Ed.2d 105 (1981); Restatement of Torts Sec. 757 (1939). On this appeal, DTI and the individual defendants do not challenge the district court's determination that any trade secret misappropriation would constitute a breach of confidence. Indeed, such a challenge would have been fruitless given the nondisclosure agreements signed by Newlin and Vafa. However, DTI and the individual defendants contend that the district court erred in finding that the "architecture" of ICM's system was a protectable trade secret. We disagree.
 
 
 12
 "The most comprehensive and influential definition of a trade secret is that set out in Sec. 757, comment b of the Restatement of Torts (1939)...." Lehman v. Dow Jones & Co., 783 F.2d 285, 297 (2d Cir.1986) (footnote omitted); accord Aronson v. Quick Point Pencil Co., 440 U.S. 257, 266, 99 S.Ct. 1096, 1101, 59 L.Ed.2d 296 (1979); see FMC Corp. v. Taiwan Tainan Giant Industrial Co., 730 F.2d 61, 63 (2d Cir.1984) (per curiam) (stating that New York follows Restatement of Torts Sec. 757, comment b). That definition, in pertinent part, provides:
 
 
 13
 A trade secret may consist of any formula, pattern, device or compilation of information which is used in one's business, and which gives him an opportunity to obtain an advantage over competitors who do not know or use it.
 
 
 14
 Restatement of Torts Sec. 757, comment b; see Delta Filter Corp. v. Morin, 108 A.D.2d 991, 992, 485 N.Y.S.2d 143, 144 (3d Dep't 1985); see also Support Sys. Assocs. v. Tavolacci, 135 A.D.2d 704, 706, 522 N.Y.S.2d 604, 606 (2d Dep't 1987). In determining whether a trade secret exists, the New York courts have considered the following factors to be relevant:
 
 
 15
 (1) the extent to which the information is known outside of his business; (2) the extent to which it is known by employees and others involved in his business; (3) the extent of measures taken by him to guard the secrecy of the information; (4) the value of the information to him and to his competitors; (5) the amount of effort or money expended by him in developing the information; (6) the ease or difficulty with which the information could be properly acquired or duplicated by others.
 
 
 16
 Eagle Comtronics, Inc. v. Pico, Inc., 89 A.D.2d 803, 803-04, 453 N.Y.S.2d 470, 472 (4th Dep't 1982) (quoting Restatement of Torts Sec. 757, comment b); see Lehman, 783 F.2d at 298 (secrecy is most important consideration).
 
 
 17
 Applying these factors to the software program at issue in this case, it is evident that ICM retains a protectable trade secret in its product. The manner in which ICM's generic utility programs interact, which is the key to the product's success, is not generally known outside of ICM. Contrary to defendants' suggestion, the non-secret nature of the individual utility programs which comprise ICM's product does not alter this conclusion. "[A] trade secret can exist in a combination of characteristics and components, each of which, by itself, is in the public domain, but the unified process, design and operation of which, in unique combination, affords a competitive advantage and is a protectable secret." Imperial Chem. Indus. Ltd. v. National Distillers and Chem. Corp., 342 F.2d 737, 742 (2d Cir.1965); see Q-Co Indus., Inc. v. Hoffman, 625 F.Supp. 608, 617 (S.D.N.Y.1985). As the district court found, the architecture of ICM's product, or the "way in which [ICM's] various components fit together as building blocks in order to form the unique whole," Integrated Cash Management, 732 F.Supp. at 374, was secret. See Dickerman Assocs., Inc. v. Tiverton Bottled Gas Co., 594 F.Supp. 30, 35 (D.Mass.1984) ("[T]he particular combination of procedures used in plaintiff's [computer] system, and the particular features within the system ... are neither obvious nor easily duplicated. They constitute a trade secret.").
 
 
 18
 Moreover, ICM's combination of programs was not disclosed in ICM's promotional literature, which contains merely a user-oriented description of the advantages of ICM's product. See A.H. Emery Co. v. Marcan Products Corp., 268 F.Supp. 289, 300 (S.D.N.Y.1967), aff'd, 389 F.2d 11 (2d Cir.), cert. denied, 393 U.S. 835, 89 S.Ct. 109, 21 L.Ed.2d 106 (1968). The defendants have not shown that the limited information available in the promotional literature contains sufficient technical detail to constitute disclosure of the product's architecture. The district court's finding that "the package as a whole, and the specifications used by ICM to make the parts of that package work together, are not in the public domain," Integrated Cash Management, 732 F.Supp. at 374, was based on extensive expert testimony.
 
 
 19
 The remaining factors to be considered in ascertaining the existence of a trade secret, see Eagle Comtronics, 453 N.Y.S.2d at 472, are also satisfied in this case. ICM has taken measures to protect the secrecy of its product architecture. See Defiance Button Machine Co. v. C & C Metal Products Corp., 759 F.2d 1053, 1063 (2d Cir.), cert. denied, 474 U.S. 844, 106 S.Ct. 131, 88 L.Ed.2d 108 (1985). The doors to the premises were kept locked. Employees, including Newlin and Vafa, were required to sign nondisclosure agreements which provided that "[w]hen employment is terminated, the [former employee] agrees not to use, copy or disclose any of ICM's secrets, software products, software tools or any type of information and software which belongs to ICM." The large investment in research and development of ICM's product has not been challenged by the defendants. Finally, the expert testimony reveals that the ICM product's architecture could not be readily duplicated without the secret information acquired by ICM through years of research. The architecture of the ICM system was not "readily ascertainable," Defiance Button Machine, 759 F.2d at 1063, other than by the improper disclosure and use by Newlin and Vafa. See Restatement of Torts Sec. 757, comment b. Accordingly, the district court found ICM's "winning combination" of generic utility programs to be a trade secret, Integrated Cash Management, 732 F.Supp. at 372. On the record before us, these findings are not clearly erroneous and, therefore, will not be disturbed. See Fed.R.Civ.P. 52(a); Defiance Button Machine, 759 F.2d at 1063; Protexol Corp. v. Koppers Co., 229 F.2d 635, 637 (2d Cir.1956); see also 1 Milgrim on Trade Secrets Sec. 2.03, at 2-32 to 2-33 (1984) ("Existence of a trade secret is a question of fact for the determination of the trier of fact, secrecy being a basic element.").
 
 
 20
 II. The Relief Granted.
 
 
 21
 As discussed above, the district court properly found a cognizable trade secret in the manner in which ICM combined various non-secret utility programs to create its software product. The court further found that the defendants made use of this information in designing similar software. Newlin and Vafa "ma[de] use of information learned while at ICM concerning which functions and relationships among the modules would and would not work in the generic program." Integrated Cash Management, 732 F.Supp. at 375. Contrary to defendants-appellants' suggestion, the court's statement that Vafa "was certainly capable of writing the source code in his own right," id., does not contradict the finding that Vafa and Newlin, in fact, used ICM's trade secrets. ICM is, therefore, entitled to injunctive relief.
 
 
 22
 Defendants-appellants contend that two aspects of the district court's injunction against them are improper. First, they challenge the court's six-month injunction prohibiting Newlin and Vafa from becoming involved in the development of programs similar to ICM's product. They argue that this injunction unfairly precluded Newlin and Vafa from utilizing their training and general experience in the field of computer programming. See SI Handling Sys., Inc. v. Heisley, 753 F.2d 1244, 1264 (3d Cir.1985); American Can Co. v. Mansukhani, 742 F.2d 314, 329-30 (7th Cir.1984). We believe that the court crafted this aspect of its injunction with a careful eye toward the balance between the right of a former employer to protect trade secrets and the right of a former employee to utilize his skills and experience. See SI Handling Sys. Inc., 753 F.2d at 1262. However, we do not reach the propriety of this aspect of the district court's injunction at this time. By its terms, the injunction against the involvement of Newlin and Vafa in DTI's programming efforts expired on April 26, 1990. The issue of the propriety of the injunction is, therefore, moot. See Powell v. McCormack, 395 U.S. 486, 495-96, 89 S.Ct. 1944, 1950-51, 23 L.Ed.2d 491 (1969); United States v. Munsingwear, Inc., 340 U.S. 36, 39, 71 S.Ct. 104, 106, 95 L.Ed. 36 (1950).
 
 
 23
 Second, the defendants-appellants challenge the district court's perpetual injunction against their distribution of any version of ICM's four generic utility programs in existence as of October 26, 1989, the date decision was rendered. They contend that this perpetual injunction gives ICM an undeserved windfall by extending the restriction beyond the six-month period which the court considered necessary "to neutralize the 'head start' gained by DTI from the improper use of ICM's trade secrets." 732 F.Supp. at 378. We disagree.
 
 
 24
 In contrast to the district court's six-month injunction against the defendants' use of ICM's programs, the court's perpetual injunction is aimed at preventing defendants' distribution of those programs as they existed on October 26, 1989. Defendants are thereby prevented from simply shelving the misappropriated information for six months, and then distributing the ICM product as their own. Following the six month period, defendants may internally use ICM's four generic programs and may alter or modify them as they choose. However, defendants may not distribute any unmodified ICM programs either during or after the six month period. The district court's injunction, when considered in toto, is a reasonable and wise exercise of discretion. See SI Handling Sys., Inc., 753 F.2d at 1263; 1 Jager, Trade Secrets Law Sec. 7.02, at 7-32.1 to 7-32.2 (1990).
 
 CONCLUSION
 
 25
 We have examined each of defendants-appellants' remaining arguments and find them to be without merit. In light of the foregoing, the district court's judgment is affirmed.
 
 
 
 *
 The Honorable Robert J. Kelleher, Senior District Judge of the United States District Court for the Central District of California, sitting by designation