**RAPCO FOAM, INC., Plaintiff,**

**v.**

**SCIENTIFIC APPLICATIONS, INC., Defendant.**

**No. 78 Civ. 2874.**

United States District Court, S. D. New York.

Nov. 8, 1979.

Aberman & Greene, New York City, for plaintiff by David Greene, Martin Lichter, New York City.

Pollack & Kaminsky, New York City, for defendant by T. Barry Kingham, Daniel Pollack, New York City.

SOFAER, District Judge:

This case is before the court on plaintiff's motion for a preliminary injunction.

Plaintiff Rapco Foam, Inc. ("Rapco") is a New York corporation in the business of manufacturing urea-formaldehyde foam, a product used in thermal and acoustical insulation in residential commercial premises, under the name Rapco Foam. Rapco Foam is manufactured in a two-step process. First, a urea-formaldehyde resin precondensate ("UF resin") is manufactured and packaged in 50-gallon drums. Second, the resin is combined, at the time of installation, with a foaming agent and air to produce the insulating foam.

In October, 1973, Rapco entered into a distributorship agreement with defendant Scientific Applications, Inc. ("Scientific"), an Iowa corporation. Under that contract, Rapco agreed to manufacture UF resin and the foaming agent at Scientific's facility in Mt. Pleasant, Iowa. Scientific was to sell and distribute the product in an exclusive territory. Scientific agreed, among other things, to supply the raw materials, utilities, and manufacturing space required to enable Rapco to manufacture the resin and foam.

Rapco began manufacturing its foam at Scientific's Mt. Pleasant facility in November 1973, and continued to do so until December 27, 1978. Precautions were taken by Rapco to keep its process secret from Scientific employees, and those who participated in manufacturing the resin signed secrecy agreements.[1] Between 1973 and 1978, Scientific distributed Rapco's product, and did no manufacturing. During that period, however, Scientific hired a chemist named Rila, allegedly to work on quality control, but in reality to develop a formula for resin that Scientific could itself produce. On December 27, 1978, Scientific began manufacturing a UF resin at its Mt. Pleasant plant, using its own equipment and raw materials. Rapco claims that Scientific's independent activities violate its contract with Rapco, and that Scientific's resin is in fact an unlawful appropriation of RAPCO's trade secret in Rapco Foam. It has moved the court to enjoin Scientific from using its trade secrets in the manufacturing of UF resin and from committing acts of unfair competition in the sale of UF resin.[2]

The standard governing motions for preliminary injunctions in this Circuit was recently reformulated in *Dallas Cowboys Cheerleaders, Inc. v. Pussycat Cinema, Ltd.*, 604 F.2d 200 (2d Cir. 1979):

1. Part of a Scientific building was set aside for Rapco foam production, with a separate entrance and signs instructing unauthorized persons to keep out. (Tr. 18–19).

2. This lawsuit was initiated by Rapco in June, 1978. In its complaint, Rapco sought damages for breach of contract arising out of the general obligations described above. On August 31, 1978, Scientific initiated a lawsuit, in Iowa state court, arising out of the same contractual agreements. That case was removed by Rapco and transferred to this district. The cases have been consolidated. The claims that are the subject of the instant motion were made by Rapco in the counterclaim to the second lawsuit.

A preliminary injunction is proper where the plaintiff establishes possible irreparable harm and either (1) probable success on the merits or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in the movant's favor.

See Selchow & Righter Co. v. McGraw-Hill Book Co., 580 F.2d 25, 27 (2d Cir. 1978); Triebwasser & Katz v. American Telephone & Telegraph Co., 535 F.2d 1356, 1359 (2d Cir. 1976); Mulligan, Preliminary Injunction in the Second Circuit, 43 Brooklyn L.Rev. 831 (1977).

On the basis of an evidentiary hearing on plaintiff's motion, it seems clear that plaintiff has proved probable success on the merits of its trade secrets claim, but has failed to show possible irreparable injury. As to its second asserted ground for preliminary relief, Rapco has failed at this stage to demonstrate that a substantial claim of unfair competition warranting preliminary injunctive relief exists.

## I. Trade Secrets

■ In order to succeed on the merits of its trade secret claim, plaintiff must demonstrate that (1) it possessed a trade secret, and (2) defendant is using that trade secret in breach of an agreement, confidence, or duty, or as a result of discovery by improper means. Restatement of Torts § 757 (1937).

■ "A trade secret may consist of any formula, pattern, device or compilation of information which is used in one's business, and which gives him an opportunity to obtain an advantage over competitors who do not know or use it." Id., comment b. Among the factors to be considered in determining whether a particular process is a trade secret are the degree of secrecy surrounding the process both within and without the plaintiff's business, the efforts expended by the plaintiff to develop the process and to preserve its secrecy, the value of the process to the plaintiff and its competitors, and the difficulty with which the process could be duplicated by others. Id.

■ Rapco has demonstrated that its process for manufacturing UF resin, insofar as it encompasses its formula and preparation procedures, is a trade secret. Rapco purchased the process from a German corporation in 1972 pursuant to a licensing agreement made exclusive in 1973. Rapco agreed orally to keep the process secret and has taken a number of steps to preserve its secrecy including requiring all Rapco employees to sign secrecy agreements and restricting access to plants at which UF resin is manufactured (Tr. 5–11). Rapco's expert, Dr. Graham Allen, testified that the process remains secret and no evidence has been introduced to show that the process is being used by any Rapco competitor other than Scientific. Furthermore, it is clear from Dr. Allan's testimony that reproducing Rapco's process, without first obtaining information in Rapco's possession, would be time-consuming and expensive. (Tr. 60–82).

Defendant claims that the cooking procedures for UF resin are a matter of public knowledge and are therefore not trade secrets. This argument is unconvincing. First, in making this claim, defendant carefully refers to "general cooking procedures," not to the specific ones developed by plaintiff. Second, the trade secret status of Rapco's process has, from the beginning, been recognized by Scientific. On November 23, 1973, J. D. Schimmelpfenig, Scientific's Chairman and Executive Vice President, signed a letter sent by Charles Stillman, Rapco's President, agreeing to "keep our formulations, (which you recognize as secret and proprietary) confidential and secret. . . ." (Pltf's Exh. 4). Significantly, Scientific's recognition of Rapco's trade secret was not limited to this agreement concerning chemical "formulations." In June 1974, Schimmelpfenig sent a letter to Rapperswill Corporation, Rapco's parent, in which he stated that "the manufacturing

process remains your trade secret." (Pltf's Exh. 6).[3]

The evidence presented in this proceeding supports plaintiff's contention that defendant has wrongfully appropriated its trade secret and is currently using it in the production of UF resin. Plaintiff's expert, Dr. Allan, testified that the ingredients, formula, and procedures used by Scientific in manufacturing its resin are identical to those contained in the Rapco trade secret. He convincingly explained how extremely likely it is that Scientific personnel essentially copied Rapco's process in developing what they now sell as their own product. (Tr. 60–79).

Defendant's argument that its process was developed independently by its employee, Dr. Clinton Rila, is untenable. Dr. Rila was hired by Scientific ostensibly to perform services in the area of quality control of UF resin. From the beginning, however, Rila worked on developing a formula and process for the production of UF resin. (E. g., Rila Dep. 77–79). This was never revealed to Rapco. The record shows that Rila exploited his access to the Mt. Pleasant facility to gather information about the production of Rapco Foam. Rila's own deposition testimony reveals many of his various investigations into Rapco's formula and process, including, among other things, conversations with a former Rapco employee then employed by Scientific (e. g., 77–79); conversations with Rapco's plant manager (e. g., 75, 79); observation of important steps in the Rapco process (e. g., 40, 226,

234); detailed analyses of finished resin and raw resin (cooked resin before the addition of additives) (e. g., 217–18, 254, 262, 268, Pltf's Exh. 23); and observation and copying of "cook sheets" that were used by Rapco to record information about each reaction in the preparation of UF resin (e. g., 68, 311–12).

Taken alone, Rila's deposition may be less than conclusive as to the extent to which the information he gathered about Rapco's process contributed to his development of Scientific's virtually identical process. Dr. Allan's testimony, however, based on his review of Rila's deposition and its exhibits, makes clear what happened. Allan explained, without effective contradiction, the enormous difficulty a scientist of Dr. Rila's background would encounter in independently arriving at Rapco's process. He explained in detail how the information gathered by Dr. Rila at the Mt. Pleasant plant could have been (and undoubtedly was) used in reproducing Rapco's trade secret.[4] Rila's persistent and repeated failure to sign a secrecy agreement during this period tends to confirm that his activities were consciously aimed at exploiting Rapco's secrets. (Tr. 21–22).

Plaintiff having shown the substantial identity of defendant's process to its trade secret, and having shown convincingly the means by which defendant could have appropriated that secret, the burden falls on defendant to demonstrate its independent development of the process. *See, e. g.*

3. Rapco's trade secret may not be as broad as it contends. Rapco seeks protection for its know-how for assembling a chemical manufacturing plant at small capital investment and for its list of manufacturers producing the ingredients used in UF resin, claiming that these are components of its secret manufacturing process. (Stillman Aff. ¶ 8). Final resolution of these issues should await the trial.

4. Dr. Allan testified that Rila's knowledge of the specific ingredients used in Rapco Foam would have aided him substantially in developing a formula for UF resin. He stated that "the knowledge of the composition of a commercially acceptable material would reduce the number of experiments from the hundreds of thousands down to a relatively small number." (Tr.

68). Moreover, he testified that Rila's comparative analyses of Rapco's raw and finished resins would be invaluable since he could deduce the relative amounts of urea and formaldehyde (Tr. 69–74). This would enable a chemist of Dr. Rila's skill to deduce how much and what materials were added at the second, final stage of production, "a deduction that would be practically impossible to otherwise make." (Tr. 73). Dr. Allan further testified that Dr. Rila's study of Rapco "cook sheets", which detail the actual preparation of the resin, and his observation of Rapco's cooking procedures, would have significantly aided him in developing a product for Scientific. (Tr. 74–77). In fact, Scientific's cooking process is "virtually identical" to Rapco's. (Tr. 77).

*Droeger v. Welsh Sporting Goods Corp.,* 541 F.2d 790, 793 (9th Cir. 1976); 2 Milgrim, *Trade Secrets* § 7.07[2] (1978). But defendant has thus far offered nothing substantial to controvert plaintiff's case. Dr. Rila's assertions are unconvincing, given his relative inexperience, and given the objective and uncontroverted evidence establishing his repeated efforts to uncover Rapco's process. It appears, therefore, that Rapco will probably succeed, at a trial on the merits, in showing that Dr. Rila's knowledge of various aspects of plaintiff's process contributed significantly to Scientific's development of the process it currently uses.

■ Rapco has not, however, met its burden of showing that defendant's misappropriation of its trade secret will cause possible irreparable injury pending final relief. Plaintiff has presented no evidence supporting its allegation that Scientific is revealing its process to third parties. Moreover, Rapco has failed to prove that money damages will not be adequate compensation for any harm caused by defendant's use of the UF resin manufacturing process.

■ Plaintiff claims, however, that the *Restatement of Torts* "indicates that the loss of economic advantage over competitors can be considered irreparable injury." (Tr. p. 85). Although the *Restatement* notes that competitive advantage is inherent in a trade secret, § 757, comment b, it makes no comment as to irreparable harm. The *Restatement* does note, however, as did Judge Frank in his dissenting opinion in *Franke v. Wiltschek,* 209 F.2d 493, 502–03 (2d Cir. 1953), that "[t]he nature of the secret is . . . an important *factor* in determining the kind of relief that is appropriate against one who is subject to liability . . . .. Thus, if the secret consists of a device or process which is a novel invention, one who acquires the secret wrongfully is

*ordinarily* enjoined from further use of it and is required to account for the profits derived from his past use." *Restatement of Torts* § 757, comment b. (Emphasis added.) Loss of competitive advantage is therefore a factor pointing toward injunctive relief, but does not relieve plaintiff of its burden of producing at least some evidence that it will suffer irreparable harm pending final judgment.

A similar argument was rejected by the Second Circuit in *Imperial Chemical Industries Ltd. v. National Distillers & Chemical Corp.,* 354 F.2d 459 (2d Cir. 1965). In language notably descriptive of the proceedings in the case at bar, the court affirmed the trial judge's refusal to grant preliminary injunctive relief:

> The trial judge repeatedly asked the appellant if it had evidence of irreparable harm to offer, but little or no such evidence was produced. The appellant appears to have relied upon a kind of claimed presumption, flowing from a showing of its ownership of a trade secret, as sufficient for the purpose. While the existence of a trade secret is evidence basic to proof of irreparable harm, it is by no means conclusive on that issue and does not operate as a matter of law to foreclose the trial judge from the exercise of discretion on the application for a preliminary injunction.[5]

In this case, plaintiff has presented no evidence concerning its position in the market for UF resin or the nature of the competition within that market that supports its conclusion that it has lost a competitive advantage that is not measurable in money damages.[6] *See Foundry Services v. Beneflux Corp.,* 206 F.2d 214 (2d Cir. 1953). Numerous means may be available to compensate plaintiff for its injuries pending final relief. *See generally,* 2 Milgrim, *Trade Secrets* § 7.08[3]. In fact, Rapco

5. Id. at 461. A colloquy between court and plaintiff's counsel similar to the one described in *Imperial Chemical Industries* took place at the hearing on the instant motion. (Tr. 83–86).

6. At the hearing, Rapco's Chairman, Fritz Kramer, testified that Rapco had lost 1200 customers to Scientific. Defendant successfully

rebutted this assertion by introducing the deposition testimony of Rapco's President, Charles Stillman, who stated that he knew of no companies that had ceased to do business with Rapco and begun to do business with Scientific. (Tr. 94).

Vice President Kramer conceded on cross examination that Rapco no longer uses the formula apparently copied by Scientific. (Tr. 50–51).

Plaintiff also relies on the rule in copyright cases that, where a prima facie case of infringement has been made, "a copyright holder is entitled to a preliminary injunction without a detailed showing of irreparable harm." *American Metropolitan Enterprises of New York v. Warner Bros. Records,* 389 F.2d 903, 905 (2d Cir. 1968). *See, e. g., Wainwright Securities v. Wall Street Transcript Corp.,* 558 F.2d 91, 94 (2d Cir. 1974); *Robert Stigwood Group Ltd. v. Sperber,* 457 F.2d 50, 55 (2d Cir. 1972). Assuming that the rule governing preliminary injunctions in copyright cases is applicable here—a proposition of some doubt—plaintiff would not succeed. Even in copyright cases, plaintiff must make at least "a threshold showing" of irreparable harm. *American Fabrics Co. v. Lace Art, Inc.,* 291 F.Supp. 589 (S.D.N.Y.1968); 3 *Nimmer on Copyright* § 14.06[A] at 14–48, n.16 (1979). No such showing has been made. Plaintiff's bald allegation of irreparable injury, without more, is not enough. *See Kontes Glass Co. v. Lab Glass, Inc.,* 373 F.2d 319 (3d Cir. 1967); *Newman v. Holobeam, Inc.,* 319 F.Supp. 1389 (S.D.N.Y.1970) (Weinfeld, J.).

## II. *Unfair Competition*

■ The plaintiff makes several additional claims under the rubric of unfair competition. While mentioning these claims in its affidavits and at the hearing, plaintiff has done little to clarify them in its legal memoranda.

First, Rapco alleges in its moving affidavit that Scientific "is advising customers that its product . . . is Rapco Foam and that Rapco is undergoing serious financial problems and will not be able to supply its product in the future." (Stillman Aff. ¶ 18). The single letter offered to support this allegation demonstrates, at best, that there may have been some confusion in the early stages as to whether Scientific was producing Rapco Foam. (Exh. H to Stillman Aff.). There is no evidence whatsoever that Scientific has made any representations concerning Rapco's condition. It is clear, moreover, that from the outset Scientific informed its dealers that it was manufacturing its own product, Thermco, and that Rapco was in no way involved with that product. (Exh. G to Stillman Aff.; Heaton Aff. ¶¶ 7–9).

Second, plaintiff alleges that defendant palmed off its product as Rapco's by exhibiting it at a trade fair in February, 1979 together with a Rapco Foam warranty. Plaintiff has not shown, however, that this action caused confusion among customers. Its only proof of such confusion consists of double hearsay in one of its affidavits. (Urich Aff. ¶ 14). Moreover, the photocopies of photographs of the trade fair exhibit offered by plaintiff are poor in quality and of little assistance to the court in drawing any conclusions as to how defendant exhibited and advertised its product.

Finally, Rapco offered proof at the hearing that Scientific was listed as a distributor of Rapco Foam in a 1979 trade directory. Apparently Rapco seeks to prove that Scientific sought, in this way, to get customers for its product. There was no evidence as to whether Scientific had placed that listing in the directory. Nor was there evidence to show whether the listing was in fact placed in the directory following the termination of Rapco's production at Scientific's plant. The sketchy testimony on that issue does not support a conclusion that Scientific has committed acts of unfair competition.

Thus, with regard to the unfair competition claim, plaintiff has failed to meet its burden of showing either probable success on the merits or sufficiently serious questions going to the merits to make them a fair ground for litigation. In any event, plaintiff faces essentially the same problems of proving possible irreparable injury on this ground as it faced in its trade secrets claim.

Pursuant to the foregoing findings of fact and conclusions of law, plaintiff's motion for a preliminary injunction is denied. Given the likelihood of plaintiff's success on

the merits, this case will be set down for trial on the earliest possible date.

SO ORDERED.