HUDSON HOTELS CORPORATION,
Plaintiff–Appellee,

v.

CHOICE HOTELS INTERNATIONAL,
and Robert Hazard, Defendants–
Appellants.

No. 1216, Docket 92–9258.

United States Court of Appeals,
Second Circuit.

Argued March 8, 1993.

Decided June 11, 1993.

**1174**

Beryl Nusbaum, Rochester, NY (Percival D. Oviatt, Jr., Woods, Oviatt, Gilman, Sturman & Clarke), for plaintiff-appellee.

Thomas R. Jones, New York City (Susan Buckley, Donald J. Mulvihill, James Sandnes, Peter Moskowitz, Cahill Gordon & Reindel), (Paul J. Yesawich III, Patricia A. Hulley, Harris Beach & Wilcox, Rochester, NY), and (Amy Strassmeyer, Choice Hotels Intern., Inc., Silver Spring, MD), for defendants-appellants.

Before: KEARSE and CARDAMONE, Circuit Judges, and ELLEN B. BURNS, Senior Judge of the United States District Court for the District of Connecticut, sitting by designation.

ELLEN B. BURNS, Senior District Judge:

In this diversity action, the Defendants–Appellants, Choice Hotels International, Inc. (formerly known as Quality Inns International, Inc. ("Quality")) and Robert Hazard ("Hazard") appeal under 28 U.S.C. § 1291 from a judgment of the United States District Court for the Western District of New York (Telesca, J.) entered on September 28, 1992 in the amount of $2,500,000 in favor of the Plaintiff–Appellee, Hudson Hotels Corp. ("Hudson"), for misappropriation of a trade secret following a jury trial. For the reasons that follow, we reverse.

## BACKGROUND

At a meeting of the International Operator's Council, Loren Ansley ("Ansley"), the now deceased founder and principal officer of Hudson, approached Robert Hazard, Chairman and Chief Executive Officer of Quality, to describe an idea or concept about a small-size, upscale hotel room he designed to capture the low-budget market segment of the hotel industry. At the meeting, Ansley never suggested that his idea was proprietary or confidential.

At a later meeting, Ansley presented Hazard with an unsolicited letter revealing in more detail the "trade secret" or what he described as the "Microtel" concept, that is, a small-size, upscale hotel room that purported to result, when built, in reduced maintenance cost, less land utilization, and reduced construction cost. The letter contained a typed statement, which the parties never discussed, that the enclosed information was proprietary to Hudson. Ansley and Hazard discussed a possible joint venture, and, a little over a month after presenting the letter, Ansley sent Hazard a confidentiality agreement which Hazard never signed.

Hudson and Quality respectively proposed and explored separate joint ventures to build and market hotels that embodied Ansley's idea but negotiations ended unsuccessfully because the parties could not agree about a continuing royalty. Neither proposal, however, involved the purchase or sale of the Microtel concept.

Quality then embarked on its own to develop a small-size, upscale hotel chain, and its architect reviewed, but ultimately did not follow, Hudson's initial drawings. Hudson also developed its own Microtel franchise operation.

In its complaint, Hudson originally alleged claims for breach of confidential relationship, misappropriation of trade secret, fraud, un-

just enrichment, and breach of contract but later amended its complaint to exclude all express references to a trade secret and instead alleged claims for theft of an idea or concept, unjust enrichment, breach of implied contract, and breach of confidential relationship.

Before trial, the district court twice denied Quality's motions for summary judgment after finding triable issues of fact. Specifically, the district court found unpersuasive Quality's arguments (i) that there was an absence of novelty that precluded recovery as a matter of law under any cause of action and (ii) that the idea, because it would inevitably be disclosed by the marketed good, could not constitute a trade secret. Before trial, however, Hudson informed the district court through pretrial briefing that Hudson had affirmatively abandoned any claim that the Microtel concept is novel. As a result, the district court precluded Hudson from presenting its claim for misappropriation under the New York law of ideas, but allowed Hudson to try the case on a single claim, misappropriation of a trade secret, despite its having previously amended the Complaint to delete any express reference to trade secrets. The jury returned a verdict for Hudson solely on its claim of misappropriation of a trade secret.

Throughout the proceedings below, the district court thrice denied Quality's motions for judgment as a matter of law under Fed. R.Civ.P. 50(a)–(b).

On appeal, Quality first contends that, because the idea of a small-size, upscale hotel room is not a trade secret entitled to protection under New York law, the district court erred when it denied its motions for summary judgment. Quality further contends that the district court erred when it allowed the case to go to trial and to the jury after Hudson affirmatively abandoned any claim that the Microtel concept was novel. In essence, Quality claims that, regardless of the label for the plaintiff's cause of action, a product idea must be novel to be protectible under New York law. Because we agree and vacate the judgment, Quality's other arguments on appeal need not be addressed.

*DISCUSSION*

I.

Summary judgment under Fed.R.Civ.P. 56(c) shall be granted if the Court finds, after viewing the facts in a light most favorable to the nonmoving party, *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970), that "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The burden is on the moving party to show that no material facts are in dispute, *Donahue v. Windsor Locks Bd. of Fire Comm'rs*, 834 F.2d 54, 57 (2d Cir.1987), and a dispute over a material fact exists if the evidence would allow a reasonable jury to return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986); *Suburban Propane v. Proctor Gas, Inc.*, 953 F.2d 780, 788 (2d Cir.1992); *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 12 (2d Cir.1986), *cert. denied*, 480 U.S. 932, 107 S.Ct. 1570, 94 L.Ed.2d 762 (1987). A court's ultimate role in considering a motion for summary judgment is not to resolve disputed issues, but only to determine whether there is a genuine and material issue for trial. *Knight v. U.S. Fire Ins. Co.*, 804 F.2d at 11; Fed.R.Civ.P. 56(e).

We review the district court's ruling on a motion for summary judgment with "the same standards, on a *de novo* basis." *Leon v. Murphy*, 988 F.2d 303, 308 (2d Cir.1993) (citations omitted); *Mikinberg v. Baltic Steamship Co.*, 988 F.2d 327, 330 (2d Cir. 1993); *Viacom Int'l Inc. v. Icahn*, 946 F.2d 998, 1000 (2d Cir.1991), *cert. denied*, —— U.S. ——, 112 S.Ct. 1244, 117 L.Ed.2d 477 (1992); *Bryant v. Maffucci*, 923 F.2d 979, 982 (2d Cir.), *cert. denied*, —— U.S. ——, 112 S.Ct. 152, 116 L.Ed.2d 117 (1991).

We similarly review the district court's denial of a motion for judgment as a matter of law under Fed.R.Civ.P. 50(a)–(b) *de novo*. *See Sir Speedy, Inc. v. L & P Graphics, Inc.*, 957 F.2d 1033, 1038–39 (2d Cir.1992). In

ruling on a motion for a judgment as a matter of law at any stage of the trial permitted by Fed.R.Civ.P. 50(a)–(b), "the district court is required to deny the motion unless, viewed in the light most favorable to the nonmoving party, 'the evidence is such that, without weighing the credibility of the witnesses or otherwise considering the weight of the evidence, there can be but one conclusion as to the verdict that reasonable men could have reached.'" *Sir Speedy, Inc. v. L & P Graphics, Inc.*, 957 F.2d at 1038–39 (quoting *Simblest v. Maynard*, 427 F.2d 1, 4 (2d Cir.1970)); *see also W.W.W. Pharmaceutical Co. v. The Gillette Co.*, 984 F.2d 567, 571 (2d Cir.1993). In analyzing the issues raised on appeal, New York law, which the parties agree controls, is applied.

## II.

To recover under New York law for the misappropriation of a trade secret, the plaintiff must demonstrate (i) that it possessed a trade secret and (ii) that the defendant used that trade secret in breach of an agreement, a confidential relationship, or duty, or as a result of discovery by improper means. *Integrated Cash Mgmt. Servs., Inc. v. Digital Transactions, Inc.*, 920 F.2d 171, 173 (2d Cir.1990); *Speedry Chem. Prods., Inc. v. Carter's Ink Co.*, 306 F.2d 328, 331 (2d Cir.1962); *Brignoli v. Balch Hardy & Scheinman, Inc.*, 645 F.Supp. 1201, 1205 (S.D.N.Y.1986); *Sublime Prods., Inc. v. Gerber Prods., Inc.*, 579 F.Supp. 248, 251 (S.D.N.Y.1984); *Rapco Foam, Inc. v. Scientific Applications, Inc.*, 479 F.Supp. 1027, 1029 (S.D.N.Y.1979); Restatement of Torts § 757 (1939). We need not reach the second prong of the above conjunctive analysis because, as a matter of law, the Microtel concept is not a protectible trade secret.

Under New York law, a trade secret "may consist of any formula, pattern, device or compilation of information [that] is used in one's business, and [that] gives [the owner] an opportunity to obtain an advantage over competitors who do not know or use it." Restatement of Torts § 757 cmt. b (1939); *Delta Filter Corp. v. Morin*, 108 A.D.2d 991, 485 N.Y.S.2d 143, 144 (3d Dep't 1985); *see also Lehman v. Dow Jones & Co.*, 783 F.2d 285, 297 (2d Cir.1986).[1] "It is critical to note, however, that the commonly accepted common law definition of a trade secret 'does not include a marketing concept or new product idea' submitted by one party to another." 2 R. Milgrim, *Milgrim on Trade Secrets* § 8.03, at 8–31 (1992 & Supp.1992) (quoting *Richter v. Westab, Inc.*, 529 F.2d 896, 900 (6th Cir.1976)) (citation omitted); *see also Lehman v. Dow Jones & Co.*, 783 F.2d at 298 (Unlike information that is used in running a business, the information relating to corporate acquisitions "was not used to run Lehman's business but was its *product:* like the car that rolls off the production line, this information was what Lehman had to sell." (emphasis in original)); *cf. General Bronze Corp. v. Ward Prods. Corp.*, 262 F.Supp. 936, 943 (N.D.N.Y.1966) (no trade secret in "the specific assembly of a cap-cork-pad").

The Microtel concept is a new product idea, nothing more. Indeed, the parties and the district court repeatedly called (and described) it as such throughout the pre-trial and trial proceedings. Certainly, the Microtel concept is not a formula, pattern, or device. Although Hudson attempts to describe the Microtel concept as a "compilation of information," a conclusion to the contrary is inescapable. Compilations of information, traditionally viewed and protected under trade secret law, are items like customer and supplier lists and pricing and

---

1. Factors that may be considered in determining whether a plaintiff possessed a trade secret include:

   (1) the extent to which the information is known outside of his business; (2) the extent to which it is known by employees and others involved in his business; (3) the extent of measures taken by him to guard the secrecy of the information; (4) the value of the information to him and to his competitors; (5) the amount of effort or money expended by him in developing the information; [and] (6) the ease or difficulty with which the information could be properly acquired or duplicated by others.

   Restatement of Torts § 757 cmt. b (1939); *Integrated Cash Mgmt. Servs., Inc. v. Digital Transactions, Inc.*, 920 F.2d at 173; *Lehman v. Dow Jones & Co.*, 783 F.2d at 297–98; *Rapco Foam, Inc. v. Scientific Applications, Inc.*, 479 F.Supp. at 1029.

cost information. *See, e.g., Lehman v. Dow Jones & Co.,* 783 F.2d at 298; *FMC Corp. v. Taiwan Tainan Giant Indus. Co.,* 730 F.2d 61, 63 (2d Cir.1984) (per curiam); *Support Sys. Assocs., Inc. v. Tavolacci,* 135 A.D.2d 704, 522 N.Y.S.2d 604, 605 (2d Dep't 1987). *See generally* 1 R. Milgrim, *Milgrim on Trade Secrets* § 2.09[7]–[8] (1992) (customer lists and business information). Indeed, the parties and this Court have been unable to find a case decided in accordance with New York law in which an idea alone or embodied in a product was found to constitute a "compilation of information" trade secret.

■ The preceding analysis militates strongly in favor of the conclusion that a new product idea cannot, as a matter of law, constitute a trade secret. We decline to reach that conclusion, however, since we confine our holding to the conclusion that a non-novel idea, which is not used secretly and continuously in commerce, is not a trade secret.

■ First, a trade secret must be used secretly and continuously in commerce. Once Hudson marketed the Microtel concept, therefore, it could not constitute a protectible trade secret because, from that time forward, it could not be used secretly and continuously in its business. *See Lehman v. Dow Jones & Co.,* 783 F.2d at 298; *Richter v. Westab, Inc.,* 529 F.2d at 900. Once it is built, marketed, and occupied, the features of the room would necessarily be disclosed publicly. *Eagle Comtronics, Inc. v. Pico, Inc.,* 89 A.D.2d 803, 453 N.Y.S.2d 470, 472 (4th Dep't 1982) (trap and filter device used in the cable television industry is not a trade secret because, *inter alia,* any secrecy in its design "was lost when it was placed upon the market"), *appeal denied,* 58 N.Y.2d 601, 458 N.Y.S.2d 1025, 444 N.E.2d 1012 (1982); *Posen v. Genesco, Inc.,* 44 Misc.2d 195, 253 N.Y.S.2d 362, 364 (Sup.

Ct. N.Y.Co.1962) (shoe allegedly embodying a new idea in shoe construction is not a trade secret because "there was no special process involved not immediately discernible to anyone"); *see also Speciner v. Reynolds Metals Co.,* 279 F.2d 337, 337–38 (2d Cir.1960) (per curiam) (the plaintiff's aluminum case window was not a trade secret because all of its features "were readily apparent from a casual inspection of the plaintiff's window which was available on the open market"); *Interox Am. v. PPG Indus., Inc.,* 736 F.2d 194, 201 (5th Cir.1984) (affirming the denial of injunctive relief on the ground the plaintiff had not established a trade secret in the configuration of a manufacturing plant because "[t]hat which is readily visible and ascertainable cannot constitute a trade secret"); *Demetriades v. Kaufmann,* 698 F.Supp. 521, 526 & n. 5 (S.D.N.Y.1988) (the features of a house consisting of " 'the designs of cabinetry, molding and other detail work developed and refined by plaintiffs' " are not trade secrets).

In the pre-marketing stage, the question whether a marketing concept or a new product idea can constitute a trade secret is murkier. However, even assuming for present purposes that an idea embodied in a product or a concept can constitute a trade secret in the pre-marketing stage, contrary to the holding of a leading case addressing the subject under section 757 of the Restatement, *Richter v. Westab, Inc.,* 529 F.2d at 900;[2] *but see Sikes v. McGraw–Edison Co.,* 665 F.2d 731, 733–34 (5th Cir.) (Texas law), *cert. denied,* 458 U.S. 1108, 102 S.Ct. 3488, 73 L.Ed.2d 1369 (1982), the Microtel concept in this case is not protectible as a trade secret because Hudson affirmatively abandoned any claim that the idea of a small-size, upscale hotel room (or any of its particular parts), which was designed (and ultimately built and

---

**2.** In *Richter,* the plaintiff alleged that the defendant had misappropriated his idea for a fashion product and a marketing concept, claiming that his marketing concept was a protectible trade secret. The Sixth Circuit, applying the Restatement, rejected that argument and held that, even if a confidential relationship existed between the parties, the marketing concept was not protectible:

> Trade secret law is designed to protect a continuing competitive advantage, which a com-

pany enjoys due to confidential information it possesses, from destruction due to disclosure by a departed former employee. A marketing concept does not by confidentiality create a continuing competitive advantage because once it is implemented it is exposed for the world to see and for competitors to legally imitate.

529 F.2d at 900.

marketed) to capture the low budget segment of the hotel market, was novel.

Despite Hudson's affirmative abandonment of any claim that its idea was novel, however, the trial below went forward to allow Hudson the opportunity to demonstrate the misappropriation of its Microtel concept as a trade secret. In allowing this, however, the district court improperly concluded that an idea, in this case embodied within a product, could be a protectible trade secret in the absence of novelty and originality.

In our opinion, New York law dictates that an idea, whether embodied in a product and called a trade secret or otherwise reduced to concrete form, must demonstrate novelty and originality to be protectible as a property right under "[any] cause of action for [its] unauthorized use." *Murray v. National Broadcasting Co.*, 844 F.2d 988, 994 (2d Cir.), *cert. denied*, 488 U.S. 955, 109 S.Ct. 391, 102 L.Ed.2d 380 (1988); *see infra* at 3908–09. Only once that threshold finding, which we believe is a mixed question of law and fact, *see, e.g., Murray v. National Broadcasting Co.*, 844 F.2d at 994, has been made should a court proceed or allow a jury to determine both whether the idea was disclosed to the defendant in a confidential or contractual relationship and whether, in violation thereof, the defendant used the idea. This holding, moreover, is by no means remarkable.

For instance, in *Ring v. Estee Lauder, Inc.*, 702 F.Supp. 76 (S.D.N.Y.1988), *aff'd per curiam*, 874 F.2d 109 (2d Cir.1989), the plaintiff's marketing concept of videotaping (and then distributing) a beautician applying makeup to a customer while simultaneously explaining the products and their purpose was not a protectible idea in the absence of novelty and therefore could not support a recovery under a misappropriation of trade secrets theory. *Id.* at 77 ("New York law is abundantly clear that a plaintiff is not entitled to relief under any theory for theft of an idea, absent proof that the idea was novel or original."). Similarly, in *Wilson v. Electro Marine Sys., Inc.*, 915 F.2d 1110, 1115–16 (7th Cir.1990), the Seventh Circuit, applying New York law, held that, in order to recover for the misappropriation of an idea embodied

in a product (in that case a fishing boat speedometer) under the rubric of trade secret law, "the plaintiff must demonstrate that his idea is 'novel.'"

Although cases involving a claim of misappropriation of an idea are not, strictly speaking, in point, we find persuasive the analysis therein: namely, that an action will not sound in tort for the misappropriation of an idea unless that idea was novel. *Lehman v. Dow Jones & Co.*, 783 F.2d at 299–300; *Koret, Inc. v. RJR Nabisco, Inc.*, 702 F.Supp. 412, 413–14 (S.D.N.Y.1988), *aff'd mem.*, 875 F.2d 307 (2d Cir.1989); *Ferber v. Sterndent Corp.*, 51 N.Y.2d 782, 783–84, 433 N.Y.S.2d 85, 86, 412 N.E.2d 1311, 1312 (1980); *Ed Graham Prods., Inc. v. National Broadcasting Co.*, 75 Misc.2d 334, 347 N.Y.S.2d 766, 769 (Sup.Ct.N.Y.Co.1973); *Educational Sales Programs, Inc. v. Dreyfus Corp.*, 65 Misc.2d 412, 317 N.Y.S.2d 840, 843–44 (Sup. Ct.N.Y.Co.1970); *Bram v. Dannon Milk Prods., Inc.*, 33 A.D.2d 1010, 307 N.Y.S.2d 571, 571 (1st Dep't 1970).

As the New York Court of Appeals stated in *Downey v. General Foods Corp.*, 31 N.Y.2d 56, 334 N.Y.S.2d 874, 877, 286 N.E.2d 257, 259 (1972) (citations omitted):

The critical issue in [a misappropriation of an idea case] turns on whether the idea suggested by the plaintiff was original or novel. An idea may be a property right. But, when one submits an idea to another, no promise to pay for its use may be implied, and no asserted agreement enforced, if the elements of novelty and originality are absent, since the property right in an idea is based upon these two elements.

*See also Murray v. National Broadcasting Co.*, 844 F.2d at 993 ("[I]deas that reflect 'genuine novelty and invention' are fully protected against unauthorized use[, but those] that are not novel 'are in the public domain and may freely be used by anyone with impunity.'" (citations omitted)); *Women Golfer, Inc. v. Meredith Corp.*, 792 F.Supp. 211, 213–14 (S.D.N.Y.1992) ("A property right in an idea derives from its novelty and originality."); *Soule v. Bon Ami Co.*, 201 A.D. 794, 195 N.Y.S. 574, 576 (2d Dep't 1922) ("No

person can by contract monopolize an idea that is common and general to the whole world."), *aff'd*, 235 N.Y. 609, 139 N.E. 754 (1923); *Ed Graham Prods., Inc. v. National Broadcasting Co.*, 347 N.Y.S.2d at 769 (same).

Consequently, "non-novel ideas are not protectible as property[;] they cannot be stolen." *Murray v. National Broadcasting Co.*, 844 F.2d at 993 (citations omitted); *Women Golfer, Inc. v. Meredith Corp.*, 792 F.Supp. at 214; *Granoff v. Merrill Lynch & Co.*, 775 F.Supp. 621, 627 (S.D.N.Y.1991), *aff'd mem.*, 962 F.2d 2 (2d Cir.1992); *Ring v. Estee Lauder, Inc.*, 702 F.Supp. at 77; *McGhan v. Ebersol*, 608 F.Supp. 277, 284 (S.D.N.Y.1985); *Downey v. General Foods Corp.*, 334 N.Y.S.2d at 877, 286 N.E.2d at 259; *Bram v. Dannon Milk Prods., Inc.*, 307 N.Y.S.2d at 571; *Ed Graham Prods., Inc. v. National Broadcasting Co.*, 347 N.Y.S.2d at 769; *Educational Sales Programs, Inc. v. Dreyfus Corp.*, 317 N.Y.S.2d at 844; *Oxenhandler v. Dime Savings Bank*, 33 Misc.2d 626, 227 N.Y.S.2d 642, 643 (Sup.Ct. Kings Co.1962). Indeed, as Quality correctly contends in its brief, if the mere change of label were sufficient to avoid proof of novelty and originality, many idea cases decided under New York law on novelty grounds would have reached the opposite conclusion if those plaintiffs merely pleaded the misappropriation of a trade secret. We believe, however, that the courts of New York neither countenance nor intend to foster a body of law that breeds inconsistent results on the basis of fortuitous or artful pleading.

### CONCLUSION

Because the district court erred as a matter of law in allowing this action for the misappropriation of the Microtel concept to proceed to trial under a trade secret theory once Hudson had affirmatively abandoned any claim of novelty, the judgment of the district court is vacated, and the case is remanded with instructions to dismiss the Amended Complaint.