MOODY, et al., Plaintiffs,

v.

MORRIS, et al., Defendants.

Morris, et al., Plaintiffs,

v.

Moody, et al., Defendants.

Nos. 08 Civ. 7604 (JSR),
08 Civ. 7683 (JSR).

United States District Court,
S.D. New York.

April 13, 2009.

Roger L. Fidler, The Law Offices of Roger L. Fidler, New York, NY, for Plaintiffs.

Aaron Daniel Patton, Friedman Law Group, New York, NY, for Defendants.

## MEMORANDUM ORDER

JED S. RAKOFF, District Judge.

By Order dated January 28, 2009, the Court granted the motion brought by Don Moody, et al. (the "Moody parties") against Kyle Morris, et al. (the "Morris parties") to dismiss with prejudice the Amended Complaint in 08 Civ. 7683 and, as a result, also dismissed as moot the Declaratory Judgment action brought by the Moody parties in 08 Civ. 7604. This Memorandum Order sets forth the reasons for those determinations and directs the entry of Final Judgment.

These cases arise from an ill-fated collaboration to develop a children's television program. Kyle Morris and William Kirksey, co-founders of plaintiff company ReadSpeak, applied for a set of patents in 1993 and 1994 for a captioning system that rendered the spoken words of live-action characters into pictograms of the words that would appear next to the head of the utterers. In October, 1994, patent # 5,741,136 (the "'136 patent") for "Audio–Visual Work with a Series of Visual Word Symbols Coordinated with Oral Word Ut-

terances" was approved and was then assigned by Morris and Kirksey to ReadSpeak. *See* Ex. A to the Amended 7683 Complaint ("Am. Compl."). Three additional patents were issued between 1998 and 2000, namely # 5,938,447 (the "'447 patent"), # 6,062,863 (the "'863 patent"), and # 6,273,726 (the "'726 patent"). Am. Compl. ¶¶ 30, 31; Exs. OO, PP, QQ to Am. Compl. These three patents, which describe a captioning system, were all tied to the original '136 patent. *See* Ex. OO ('447 patent) ("This application is a continuation-in-part of ... U.S. Pat. No. 5,741,136 ..."); Ex. PP ('863 patent) ("This application is a divisional application of ... U.S. Pat. No. 5,741,136 ..."); Ex. QQ ('726 patent) ("This application is a continuation of ... U.S. Pat. No. 6,062,863 which application was a divisional application of ... U.S. Pat. No. 5,741,136 ...").

All of the patents include substantially similar language in their "Description" and "Summary of Invention" sections, rooting their development in subtitling and captioning technologies. All of the patents refer to the embodiment of spoken words as physically rendered word-objects that appear near the head of the utterer. *See* Ex. A ('136 patent) ("[the patent includes] a feature that each writing appears near, on, or in association with the head of the utterer such that ... an impression is created by the proximity to and alignment with the mouth that the word has emerged from the mouth"); Ex. OO (same); Ex. PP (same); Ex. QQ (same).

In 1999, Richie Havens, a recording artist, began collaboration with Morris to develop a children's show that would exploit the ReadSpeak captioning patents. Am. Compl. ¶ 33. Gary Friedman and Noah Shube, ReadSpeak's counsel, eventually joined the venture as equity partners. The Morris and Havens project became a children's show called *Mister Word Wizard*. *Id.* ¶ 34. By November, 1999, the group formed Wham Productions, Inc. ("Wham"), which was given a product license by ReadSpeak to develop the show featuring Havens and using the ReadSpeak Captions. *Id.* ¶ 36. Defendant Don Moody joined the venture as CEO, *see id.* ¶ 40, and Wham was reformed as a new company called Playgroundz Productions, Inc. ("PPI"). All rights under Wham were transferred to PPI on June 27, 2000. *Id.* ¶ 41; Ex. H.

By late 2001, however, discord among the principals of PPI was becoming evident and it eventually led the parties to sign a Separation Agreement on May 22, 2002, after which there appears to have been no further contact between the Morris parties and the Moody parties. Friedman and Moody retained ownership of PPI and its license with ReadSpeak. Morris and Havens divested themselves of all interests in PPI, but received the rights to the *Mister Word Wizard* show. *Id.* ¶ 77.

On November 2, 2002, Moody and Friedman closed PPI and reopened (without the Morris parties) as WordWorld, which developed *Word World*, the children's show at the center of this action. *See id.* ¶ 79. WordWorld also trademarked the slogan "Where Words Come Alive." *Id.* ¶¶ 82–83. The new *Word World* TV show was aired on September 3, 2007, almost a decade and a half after the inception of ReadSpeak and Wham. Subsequent to *Word World's* premiere, counsel to the Morris parties circulated a draft complaint to several television networks associated with *Word World* (though not to defendant WordWorld itself) alleging various causes of action against the Moody parties. In response, the Moody parties, on August 28, 2008, filed the instant Declaratory Judgment action, 08 Civ. 7604, seeking a declaration that the Moody parties had not infringed any copyrights or patents and were therefore not liable to the Morris

parties. Declaratory Judgment Complaint at 18. On September 2, 2008, the Morris parties, in turn, filed their instant complaint, 08 Civ. 7683, which is substantially similar to the draft complaint they had circulated.

The initial 7683 complaint filed by the Morris parties included sixteen causes of action, many of which were inadequately pleaded. Following oral argument on an initial motion to dismiss, the Court, by Order dated November 3, 2008, granted the Morris parties leave to amend that complaint, and they subsequently filed, on November 10, 2008, an Amended Complaint containing fourteen causes of action. After supplemental briefing on the Moody parties' renewed motion to dismiss, the Court heard further oral argument on January 22, 2009 and, a few days later, issued its Order dismissing the Morris parties' Amended Complaint.

■ The heart of the Morris parties' complaint lies in their claims for patent infringement (Claim 1) and copyright infringement (Claim 7). As to the first claim for patent infringement, an infringing product must encompass *all* of the limitations that define the invention. *See IMS Tech., Inc. v. Haas Automation, Inc.,* 206 F.3d 1422, 1429 (Fed.Cir.2000); *British Telecomms. PLC v. Prodigy Comms. Corp.,* 217 F.Supp.2d 399, 403 (S.D.N.Y.2002)("Whether infringement is established literally or under the doctrine of equivalents, *every* element, or its substantial equivalent, set forth in the claim must be found in the product in question.") (emphasis added). Therefore, the "dependent claims" upon which the Morris parties' rely are subject to the limitations of the "parent claim," or in this case, the '136 patent. *See Jeneric/Pentron, Inc. v. Dillon Co.,* Inc., 205 F.3d 1377, 1383 (Fed.Cir. 2000).

■ While the original complaint rested entirely on the primary '136 patent, the Amended Complaint includes claims based upon three additional patents, namely the '447, '863, and '726 patents. As noted, all are directly related to the ReadSpeak captioning system. By contrast, *Word World* is comprised of "word-objects" that do not rely on any captioning or subtitling system. Thus, in the *Word World* universe, a "bee" consists of the word "bee" shaped like the object that it names; the character "CAT" is made up of the letters "C–A–T" in the shape of a cat. These characters speak dialogue and captioning is nowhere involved. This fundamental difference between *Word World* and the patents here in issue requires dismissal of the first claim (for patent infringement) of plaintiff's Amended Complaint.

■ The copyright claim (Claim 7) focuses primarily on: (1) the trademarked phrase "Where Words Come Alive," and (2) *Word World's* purported "teaching methodology." Leaving aside the fact that the Morris parties did not hold any valid copyright at the time they filed their initial Complaint, no viable copyright claims exist here. First, it is axiomatic that words, short phrases, titles, and slogans are not subject to copyright, even if they can be trademarked. *See* 37 C.F.R. § 202.1; *N.Y. Mercantile Exch., Inc. v. IntercontinentalExchange, Inc.,* 389 F.Supp.2d 527, 543 (S.D.N.Y.2005). *See also Arica Inst., Inc. v. Palmer,* 970 F.2d 1067, 1072 (2d Cir.1992); *Kitchens of Sara Lee, Inc. v. Nifty Foods Corp.,* 266 F.2d 541, 544 (2d Cir.1959). There is no question, therefore, that the trademarked phrase "Where Words Come Alive" cannot support a claim for copyright infringement. Similarly axiomatic is the doctrine that copyright protection does not "extend to any idea, procedure, process, system, [or] method of operation ... regardless of the form in which it is described, explained, illustrated, or embodied. ..." 17 U.S.C. § 102(b). A

"teaching methodology" cannot, therefore, be copyrighted. Since no other copyright infringement is adequately alleged, the claim for copyright infringement (Claim 2) must likewise be dismissed.

■ All the other claims save one are state law causes of action that are time-barred by the applicable New York statutes of limitations because they are predicated upon actions that took place between 1999 and May, 2002, *i.e.*, well beyond even the most generous, six-year statute of limitations applicable hereto. *See* N.Y. C.P.L.R. §§ 213–14 (2007). Counsel for the Morris parties has acknowledged that these claims cannot be brought unless the statute of limitations is equitably tolled, *see* Plaintiff's Supplemental Brief in Opposition to Defendants' Motion to Dismiss ("Pl. Supp. Opp.") at 10, but the Court determines that no equitable tolling, which is available "only in ... rare and exceptional circumstance[s]," *Bertin v. United States,* 478 F.3d 489, 494 n. 3 (2d Cir.2007) (internal quotations omitted), is available here, because from the face of the Amended Complaint, it is clear that plaintiffs have not adequately alleged and cannot establish the diligence required to preserve their claims under equitable tolling. *See Zerilli–Edelglass v. New York City Transit Auth.,* 333 F.3d 74, 82 (2d Cir. 2003). According to the Amended Complaint, the *Word World* program was advanced by the Moody parties in highly public activities beginning as early as 2001. For example, from late 2001 through the spring of 2002, "word-as-object" test market toys were displayed at toy industry fairs, even before the Separation Agreement was signed later that year, *see* Am. Compl. ¶ 74, and in 2004, a popular CNBC television program, *Squawk Box,* ran an extended feature on WordWorld. Answer ¶ 33. Also in 2004, Moody filed a public patent application on the "word-as-object" concept and WordWorld trademarked "Where Words Comes Alive." *Id.* ¶¶ 80–83. Finally, in 2005, the defendants "won a highly publicized grant from the United States Department of Education." *See* Answer ¶ 33. The Amended Complaint fails to allege that the Morris parties were unaware of these highly public activities.

Moreover, even if the Morris parties failed to discover these activities until *Word World* premiered in September, 2007, the Morris parties did not bring suit until a full year later, and this was unreasonable on its face. *See Wall v. National Broadcasting Co.,* 768 F.Supp. 470, 476 (S.D.N.Y.1991) (plaintiff is entitled to "reasonable" time to file a claim upon discovery, concluding that nine months was not within a reasonable period). *See also Smartix Int'l Corp. v. MasterCard Int'l LLC,* No. 05 Civ. 4503, 2008 WL 4444554, at *4 (S.D.N.Y. Sept. 30, 2008); *Figueroa v. Fischer,* 99 Civ. 2392, 2003 WL 1701997, at *6 (S.D.N.Y. Mar. 31, 2003) (collecting cases in which equitable tolling was denied where the claimant waited less than a year).[1] Accordingly, all of the plaintiffs' state law claims, *i.e.,* Counts 2–6, 8–12, and 14, must be dismissed.

■ Independently, moreover, the state law claims must be dismissed as failing to state causes of action. To begin with, the plaintiffs allege two claims for theft of trade secrets, reportedly on behalf of ReadSpeak (Claim 2) and on behalf of Sharing World and Morris (Claim 8). In order to state a claim for misappropriation of trade secrets, the claimant must allege: (1) that it possessed a trade secret and (2)

---

1. The Court need not reach the Morris parties' alternative argument that the statute of limitations can also be calculated to run two years from the date of discovery, since the argument was impermissibly raised for the first time at oral argument after two rounds of briefing, *see* transcript 1/22/09.

that defendant used that trade secret in breach of an agreement, confidential relationship or duty, or as a result of discovery by improper means. *North Atlantic Instruments, Inc. v. Haber*, 188 F.3d 38, 43–44 (2d Cir.1999) (citing *Hudson Hotels Corp. v. Choice Hotels Int'l, Inc.*, 995 F.2d 1173, 1176 (2d Cir.1993); *Integrated Cash Mgmt. Servs., Inc. v. Digital Transactions, Inc.*, 920 F.2d 171, 173 (2d Cir.1990)). "It is critical to note ... that the commonly accepted common law definition of a trade secret does not include a marketing concept or new product idea submitted by one party to another." *Hudson Hotels*, 995 F.2d at 1176 (internal quotation and citation omitted). Therefore, once an idea is disseminated publicly, it cannot be considered a trade secret inasmuch as a trade secret "must be used secretly and continuously in commerce." *Id.* at 1177.

The plaintiffs identify the "Trade Secret" in question as the "word-as-object" concept. Pl. Supp. Opp. at 9. Far from being "used secretly and continuously" since its inception, however, the "word-as-object" concept was, on the face of the Amended Complaint, actively and widely dispersed. According to the Amended Complaint, the concept was discussed in a meeting attended by third parties in August, 2001, *see* Am. Compl. ¶ 53, and was thereafter disclosed to retailers in the toy industry for test-marketing purposes, *see id.* ¶ 74. In the face of such allegations in their own Amended Complaint, the plaintiffs, in their instant papers, make no attempt to defend their trade secret claims in opposition to the defendants' motion to dismiss, and the Court is unable to discern what argument, if one were made, would be adequate to preserve this claim. Therefore, Claims 2 and 8 for the theft of trade secrets must be dismissed.

Plaintiffs also allege two breach of contract claims—one on behalf of Sharing World and Morris against defendants WordWorld, Moody, and Friedman (Count 6) for failure to assign alleged patentable improvements to the Morris parties, and, the other on behalf of all plaintiffs against Friedman and Moody (Count 12), which though styled as a claim for breach of the implied covenant of good faith and fair dealing, is on its face based on an alleged breach of a licensing agreement with ReadSpeak.

More specifically, Count 6 focuses on the License Agreement dated March 1, 2001 in which PPI had agreed to assign all "patentable improvements" to ReadSpeak. *See* Am. Compl. ¶ 145; Ex. O to Am. Compl. Although the plaintiffs argue that WordWorld, as successor to PPI, is also bound by this agreement (despite the fact that none of the defendants are parties to a license agreement with ReadSpeak), the "patentable improvements" to which the licensing language refers are, in any event, limited to ReadSpeak's captioning technology, and the Amended Complaint fails to allege that this technology is used by any of the defendants named in Count 6.

As to Count 12, the plaintiffs allege breach of a licensing agreement with ReadSpeak, but as no such agreement exists, this claim also fails. Additionally, the Court finds that the plaintiffs' loose theory of fraudulent concealment as pleaded in this claim is undermined by the sheer amount of publicly available information concerning *Word World's* development that, as noted, the Amended Complaint itself alleges. Accordingly, Claims 6 and 12 must be dismissed.

The plaintiffs also allege four counts of fraud and conspiracy to defraud, specifically: on behalf of ReadSpeak for common law fraud by Moody, Friedman, Ira Sockowitz, Peter Schneider, Jacqueline Moody, John Lee, The Learning Box ("TLB"), and Ready to Learn Partnership ("RTLP") (Count 4); on behalf of ReadSpeak for

conspiracy to defraud by Moody, Friedman, Sockowitz, Schneider, J. Moody, Lee, TLB, RTLP, Window to the World Communications ("WTTW"), John and Jane Does 1–10, the ABC Corp., and XYZ Corp. (Count 5); on behalf of Sharing World and Morris for common law fraud by Friedman and Moody (Count 9); and on behalf of Sharing World and Morris for conspiracy to defraud by Friedman, Moody, Sockowitz, Schneider, J. Moody, John and Jane Does 1–10, ABC Corp., and the XYZ Corp (Count 10).

 Under New York law (which governs these claims), the elements of a claim for fraud are: (1) a misrepresentation that was false and known by defendant to be false, (2) made for the purpose of inducing the plaintiff to rely on it, and (3) justifiably relied upon by the plaintiff, (4) who then suffered an injury as a result of such reliance. *City of New York v. Smokes–Spirits.Com, Inc.*, 541 F.3d 425, 454 (2d Cir.2008). Furthermore, common law fraud claims are subject to the heightened pleading standards of Rule 9(b), which requires a complaint to (1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent. *Rombach v. Chang*, 355 F.3d 164, 170 (2d Cir.2004). The fraud and conspiracy to defraud claims in the Amended Complaint do not remotely meet these pleading standards but instead consist largely of conclusory statements, and therefore plainly fail to meet the stringent Rule 9(b) pleading standards. Moreover, since the plaintiffs were on notice of this defect when they amended their complaint and still were unable to cure it, the dismissal of these claims must be with prejudice.

 The plaintiffs also allege claims of breaches of fiduciary duty: on behalf of ReadSpeak against Friedman and Noah Shube as partners of the Law Offices of Friedman & Shube (Claim 3) and on behalf of Sharing World and Morris against Moody and Friedman (Claim 11). Specifically, these claims are premised on the allegations that the defendants breached their duty to plaintiffs by developing *Word World* and related merchandise subsequent to PPI's dissolution. However, these claims are refuted, on their face, by section 3(g) of the Separation Agreement, *see* Ex. Q to the Am. Compl., which states: "Nothing in this Section 3 shall be deemed to prohibit either party from developing or selling any product or property that integrates words or letters into any physical structure ( [e.g.,] tiles, planks, etc.)[.]" Although the Amended Complaint alleges in conclusory fashion that the Separation Agreement is invalid because the plaintiffs were fraudulently induced to sign the Agreement, *see* Am. Compl. ¶ 196, this allegation does not have the specificity necessary even to meet the requirements of Rule 8 of the Fed.R.Civ.P., let alone Rule 9(b). Moreover, an examination of the Separation Agreement reveals that all of the signatories had carefully initialed each page of the Agreement, and the Agreement itself states in § 14 that "Morris, Havens and PPI each affirm that they have consulted counsel of their choice with respect to this Agreement." Therefore, the Court reaffirms the dismissal of these claims.[2]

 As to the last state law cause of action, which is for unjust enrichment (Claim 14), under New York law a plaintiff bringing such a claim must allege: (1) that the defendant benefitted; (2) at the plain-

---

**2.** Although the Amended Complaint also refers in conclusory fashion to an alleged violation of Canon 6 of the Canons of Professional Ethics, it fails to specify the violation and, in any case, plaintiffs' brief appears to have abandoned any such claim.

tiff's expense; and (3) that equity and good conscience require restitution. *See Beth Israel Med. Ctr. v. Horizon Blue Cross & Blue Shield of N.J., Inc.,* 448 F.3d 573, 586 (2d Cir.2006); *see also Kaye v. Grossman,* 202 F.3d 611, 616 (2d Cir.2000). The Amended Complaint fails, however, to specify any benefit accrued to the defendants at the plaintiffs' expense, and, in any event, plaintiffs, in not responding in their motion papers to defendants' objection to these claims, must be deemed to have abandoned them. Claim 14 must therefore be dismissed.

After the dismissal of all the foregoing state and federal claims, all that is left is the plaintiffs' civil RICO claim (Claim 13), which, being premised on predicate acts of fraud, must meet the requirements of Fed R. Civ. P. Rule 9(b). A civil RICO claim must sufficiently plead: "(1) conduct, (2) of an enterprise, (3) through a pattern (4) of racketeering activity," in addition to "injury to business or property as a result of the RICO violation." *Anatian v. Coutts Bank (Switzerland) Ltd.,* 193 F.3d 85, 88 (2d Cir.1999) (internal quotations and citation omitted). Despite having the opportunity to amend their complaint, the plaintiffs have not pleaded a single one of these elements to the degree of particularity required by Rule 9(b). Moreover, all of the allegations underlying this claim occurred before May, 2002 and, under the 4–year statute of limitations applicable to civil RICO claims, this claim, like the state law claims, is time-barred. *See Agency Holding Corp. v. Malley–Duff & Assocs., Inc.,* 483 U.S. 143, 156, 107 S.Ct. 2759, 97 L.Ed.2d 121 (1987).

For the foregoing reasons, all counts of the Amended Complaint must be dismissed with prejudice. The Clerk of the Court is therefore directed to enter Final Judgment dismissing the case in its entirety.

SO ORDERED.