■ DELTA FILTER CORPORATION, Appellant-Respondent, v GILLES A. MORIN et al., Respondents-Appellants. — Per Curiam. Cross appeals from a judgment of the Supreme Court, entered January 18, 1984 in Saratoga County, upon a decision of the court at Trial Term (Ford, J.), without a jury.

In 1975, plaintiff, Delta Filter Corporation (Delta), purchased the filtration division of a Schenectady-based environmental research and development company known as Environment One Corporation, including its machinery and equipment for producing high efficiency particulate air (HEPA) filters. Simultaneously, various Environment One Corporation personnel transferred their employment to Delta, among whom was defendant Gilles Morin, who was put in charge of Delta's HEPA filter production. Morin, defendant Thomas Pratt (another Delta employee) and Harry Grounds incorporated defendant Northland Filter Systems, Inc. (Northland) in April 1981; two months later, Morin resigned from Delta.

When Northland then went into competition with Delta in the production and sale of HEPA filters, Delta commenced the instant action for an injunction and damages. The action was

based on allegations that Northland had misappropriated Delta's trade secrets by using identical machine components and processes in producing HEPA filters and by taking over its customer lists. The latter claim was subsequently abandoned, however. Northland counterclaimed for damages, based upon allegations of Delta's trade defamation and interference with Northland's business relationships with its suppliers and customers. After a nonjury trial, Trial Term dismissed the complaint at the close of plaintiff's case and the counterclaims of the close of all the proof. These cross appeals ensued.

In dismissing the complaint, Trial Term found that the three principal manufacturing components of Northland's production of HEPA filters were substantially identical to those of Delta's, namely, the pleater which folds the filter or media paper into accordion pleats, a corrugator which imparts an image into aluminum separators between the pleats, and a dual saw used to cut and trim the filter's particle board frame. Trial Term nevertheless ruled against Delta on the ground that neither Delta's equipment nor its production process was of such a nature as to attain the status of a trade secret. Our review of the record leads us to conclude that Trial Term was correct in its assessment.

New York has substantially adopted the approach of the original Restatement of Torts (1939) to the law of trade secrets (*Eagle Comtronics v Pico, Inc.,* 89 AD2d 803, 804, *lv denied* 58 NY2d 601; *Ferranti Elec. v Harwood,* 43 Misc 2d 533, 539; *Minnesota Min. & Mfg. Co. v Technical Tape Corp.,* 23 Misc 2d 671, 678-679, *affd* 15 AD2d 960, *affd* 18 AD2d 679). Under the rationale of the Restatement, a trade secret is generally defined as a formula, process, device or compilation of information used in one's business which confers a competitive advantage over those in similar businesses who do not know or use it (Restatement of Torts § 757 comment b [1939]). An essential requisite to legal protection against misappropriation of such a formula, process, device or compilation of information is the element of secrecy. Secrecy is used in the Restatement in two related senses: (1) as substantial exclusivity of knowledge of the formula, process, device or compilation of information ("Matters of public knowledge or of general knowledge in an industry cannot be appropriated by one as his secret" [*id.*]); and (2) as the employment of precautionary measures to preserve such exclusive knowledge by limiting legitimate access by others ("Nevertheless, a substantial element of secrecy must exist, so that, except by the use of improper means, there would be difficulty in acquiring the information" [*id.*]).

Regarding the element of secrecy in the first of the foregoing connotations, Trial Term held that Delta failed to prove that its

filter production process was materially different from those of its competitors, or that its equipment was generally unavailable and not easily assembled. The record amply supports that conclusion. Northland's expert testified, and in some instances demonstrated by comparison photographs, that other manufacturers of various kinds of filters use pleating equipment similar to Delta's and thereby produce similar results; that sellers of HEPA filter manufacturing equipment marketed corrugating machines similar in composition, design and function to Delta's and Northland's; and that the double-saw trimming device was sold on the open market and was in use at the plants of several competitors. Even Delta's expert acknowledged that the only distinctive feature of the entire Delta filter manufacturing process was its pleater. As Trial Term stated, however, it was dubious as to the degree to which Delta's method of pleating the filter gave it any significant competitive advantage.

The proof of Delta's precautions to safeguard its process and equipment from public disclosure by all but improper means was equally unpersuasive on the secrecy element of its claim. According to an engineering consultant employed exclusively by Delta, the machines at issue could be duplicated without blueprints or photographs by simply describing them from memory to an experienced machinist. This corroborated Northland's witnesses regarding the basic technique through which Northland was able to reproduce its devices. Yet Delta failed to take rudimentary precautions to prevent employees from acquiring familiarity with the machines during their work, or later using the knowledge thus acquired after leaving the company. Delta's president also admitted that its filter production process and devices were open to inspection from time to time by representatives of its competitors. Although Delta's president testified to restrictions on access to blueprints, this conflicted with the testimony of other witnesses, thus merely creating an issue of credibility which Trial Term was in the best position to resolve (*see, Huertas v State of New York,* 84 AD2d 650, 651).

In short, Delta failed to sustain its burden of proof that the process or machines used in producing HEPA filters was significantly distinctive or secret so as to merit trade secrecy protection. Likewise, particularly in the absence of any secrecy agreement preventing defendants Morin and Pratt from using the technical knowledge which they naturally and legitimately acquired during their employment, the credible evidence does not support any inference that they used improper means to acquire the information necessary to reproduce Delta's processes and equipment, or that such means were necessary to do so. Here, as

in *Ferranti Elec. v Harwood* (43 Misc 2d 533, *supra*), the actions of the individual defendants were "as consistent with the normally expected desire for fair, economic self-improvement as they [were] with a well-planned, well-concealed conspiratorial attempt at industrial piracy" (*supra,* at 541-542). Accordingly, Trial Term correctly dismissed the complaint.

Regarding defendants' counterclaims, the record is devoid of any proof of Delta's counteractions against Northland other than informing customers and suppliers that the Northland principals were no longer employed by Delta and that there was litigation between the two companies. Since such statements in no way establish an actionable claim for defamation, unfair competition or tortious interferences with business relationships, the counterclaims were also properly dismissed.

For all of the foregoing reasons, the judgment should be affirmed.

Judgment affirmed, without costs. Mahoney, P. J., Kane, Casey and Weiss, JJ., concur.