b. Misappropriation of Trade Secrets
Defendants claim that Counts 5 and 6 in the proposed Supplemental/Amended Complaint, which allege misappropriation of trade secrets, are also futile.
In New York, a plaintiff claiming misappropriation of a trade secret must show: "(1) it possessed a trade secret, and (2) defendant is using that trade secret in breach of an agreement, confidence, or duty, or as a result of discovery by improper means." Integrated Cash Mgmt. Serv., Inc. v. Dig. Transactions, Inc., 920 F.2d 171, 173 (2d Cir. 1990) ; see Norbrook Lab. Ltd. v. G.C. Hanford Mfg. Co., 297 F.Supp.2d 463, 482 (N.D.N.Y. 2003). A party claiming misappropriation must first demonstrate the existence of a trade secret. In New York, courts define a trade secret using the first Restatement of Torts Section 757. See North Atl. Instruments, Inc. v. Haber, 188 F.3d 38, 44 (2d Cir. 1999). A trade secret is " 'any formula, pattern, device or compilation of information which is used in one's business, and which gives him an opportunity to obtain an advantage over competitors who do not use it.' " Ruckelshaus v. Monsanto co., 467 U.S. 986, 1001, 104 S.Ct. 2862, 81 L.Ed.2d 815 (1984) (quoting RESTATEMENT OF TORTS § 757, Comment b). Courts use six factors in determining the existence of a trade secret:
(1) the extent to which the information is known outside of [the] business; (2) the extent to which it is known by employees and others involved in [the] business; (3) the extent of measures taken by [the business] to guard the secrecy of the information; (4) the value of the information to [the business] and [its]
*158 competitors; (5) the amount of effort or money expended by [the business] in developing the information; (6) the ease or difficulty with which the information could be properly acquired or duplicated by others.
Ashland Mgmt. Inc. v. Janien, 82 N.Y.2d 395, 407, 604 N.Y.S.2d 912, 624 N.E.2d 1007 (1993) (quoting Restatement (First) of Torts § 757, cmt b (1939) ). " '[U]se' of a trade secret" can "include 'any exploitation of the trade secret that is likely to result in injury to the trade secret owner or enrichment to the defendant,' including 'marketing goods that embody the trade secret, employing the trade secret in manufacturing or production, relying on the trade secret to assist or accelerate research or development, or soliciting customers through the use of information that is a trade secret.' " Next Communications, Inc. v. Viber Media, Inc., No. 14-cv-8190, 2016 WL 1275659 at *4 (S.D.N.Y. Mar. 30, 2016) (quoting RESTATEMENT (THIRD) OF UNFAIR COMPETITION § 40 cmt. c (Am. Law. Inst. 1995) ).
In New York, "a trade secret 'may consist of any formula, pattern, device or compilation of information [that] is used in one's business, and [that] gives [the owner] an opportunity to obtain an advantage over competitors who do not know or use it.' " Hudson Hotels Corp. v. Choice Hotels Intl'l, Inc., 995 F.2d 1173, 1176 (2d Cir. 1993) (quoting Restatement of Torts § 757 cmt. b (1939); Delta Filter Corp. v. Morin, 108 A.D. 2d 991, 485 N.Y.S.2d 143 (App. Div. 3d Dept 1985) ). An idea can constitute a trade secret, but "an action w ill not sound in tort for the misappropriation of an idea unless the idea was novel." Id. at 1178. This rule exists because " 'non-novel ideas are not protectible as property[;] they cannot be stolen.' " Id. at 1179 (quoting Murray v. National Broadcasting Co., 844 F.2d 988, 993 (2d Cir. 1988) ). "[A] trade secret is 'not simply information as to single or ephemeral events in the conduct of the business; rather, it is a process or device for continuous use in the operation of the business.' " Bear Stearns Funding, Inc. v. Interface Group-Nev., Inc., 361 F.Supp.2d 283, 305 (S.D.N.Y. 2005) (quoting Softel, Inc. v. Dragon Medical and Scientific Communications, Inc., 118 F.3d 955, 968 (2d Cir. 1997) ). " 'A trade secret can exist in a combination of characteristics and components, each of which, by itself, is in the public domain, but the unified process, design and operation of which, in unique combination, affords a competitive advantage and is a protectable asset.' " Norbrook Labs. v. G.C. Hanford Mfg. Co., 297 F.Supp.2d 463, 483 (N.D.N.Y. 2003) (quoting Minnesota Mining & Mfg. Co. v. Pribyl, 259 F.3d 587, 595-96 (7th Cir. 2001). "The existence ... of a trade secret usually is treated as a question of fact." Chevron U.S.A., Inc. v. Roxen Service, Inc., 813 F.2d 26, 29 (2d Cir. 1987).
1. Count 5
In Count 5, Plaintiff alleges that "Bailey had access to proprietary and confidential information regarding the Plaintiff's contracts, pricing, product costs, internal sales strategies, legal and regulatory procedures, and competitive positions within the Plaintiff's industry" during his employment with AMBC. Supp. Complt. at ¶ 91. That information, Plaintiff alleges, had been "gathered through significant time, effort, and cost," and allowed "Plaintiff to gain an advantage over competitors within the Plaintiff's industry who do not have access to the same." Id. at ¶ 92. Plaintiff alleges that Bailey used particular information to advance Premier's interests in competing with AMBC. Plaintiff alleges that Bailey used "the status of the Plaintiff's contract with DOC, the involvement of Peckham in continuance of the *159 contract, and the Plaintiff's internal costs and profit margins with regard to that contract" in this effort. Id. at ¶ 93. Plaintiff seeks both injunctive relief and damages concerning this alleged misappropriation of trade secrets.
Defendants' contends that Plaintiff has not alleged the existence of a trade secret and did nothing to attempt to protect any trade secret that may have existed. Accepting the allegations here as true, however, Plaintiff has plausibly alleged the existence of trade secrets, if barely. Read as a whole, and making all inferences in Plaintiff's favor, Plaintiff's complaint alleges that AMBC developed and used a compilation of information about marketing, pricing, packaging, and selling testing kits to the Michigan DOC that provided the company with a significant advantage over competitors. As explained in connection with the breach-of-contract claims, not all of Plaintiff's allegedly confidential information could constitute a trade secret, but at this stage in the litigation that allegation is sufficiently pled. Likewise, the question of whether Plaintiff acted adequately to protect the information is best left until after discovery. As discussed above, Plaintiff made an effort through a confidentiality agreement to keep the alleged trade secrets confidential. Plaintiff will be required, of course, to point to actual trade secrets in sufficient detail after discovery. The Court will therefore grant the Plaintiff's motion in this respect.
2. Count 6
Count 6 alleges that Defendant Bailey misappropriated trade secrets in connection with Plaintiff's and Premier's dealings with NABA. Plaintiff alleges that, while employed at AMBC, Bailey gained "access to proprietary and confidential information regarding the Plaintiff's contracts, pricing, product costs, internal sales strategies, legal and regulatory procedures, and competitive positions within the Plaintiff's industry." Supp. Complt., at ¶ 101. Plaintiff further alleges that the information in question had been "gathered through significant time, effort, and cost[.]" Id. at ¶ 102. That information also allegedly allowed "Plaintiff to gain an advantage over competitors within the Plaintiff's industry who [did] not have access to the same." Id. When it came to competing against Plaintiff in relation to the NABA contract, Bailey "used such information-in particular, information regarding Plaintiff's sales strategies, profit margins, and pricing on the NABA contract, and NABA's price mark up[.]" Id. at ¶ 103.
For the reasons stated above, the Court finds that the proposed Complaint is not futile in this respect either. Plaintiff will of course have to provide sufficient detail about the trade secrets alleged and show they did not constitute public knowledge to survive a motion for summary judgment or to prevail at trial, but at this point in the litigation the Court cannot find a right to relief implausible on the facts alleged. Plaintiff's motion will be granted in this respect.
c. Breach of Duty of Loyalty/Diversion of Corporate Opportunity
Count 7 of the proposed Supplemental/Amended Complaint alleges that Bailey, either as an employee or a consultant, owed a duty of loyalty "with regard to the Plaintiff's existing and prospective customers." Supp. Complt., at ¶ 107. Plaintiff alleges that Defendant "met with the U.S. Department of Defense on multiple occasions at the Plaintiff's expense and putatively on the Plaintiff's behalf for the purpose of securing a contract between the Department of Defense and Plaintiff." Id. at ¶ 108. While Bailey did not secure a contract with the Department of Defense for Plaintiff, he secured one for Premier shortly after ending his relationship with *160 Plaintiff. Id. at ¶ 109. Plaintiff alleges Bailey "neglected to use the knowledge, relationships, and resources he secured for the benefit of the Plaintiff, and instead used them for his own benefit and the benefit of Premier." Id. at ¶ 110. That damage injured Plaintiff by "diverting a corporate opportunity." Id. at ¶ 111.
In New York, an employee cannot "appropriate corporate assets or opportunities to himself or to a new corporation formed for that purpose." Greenberg v. Greenberg, 206 A.D.2d 963, 964, 614 N.Y.S.2d 825 (4th Dept. 1994). "The doctrine of 'corporate opportunity' provides that corporate fiduciaries and employees cannot, without consent, divert and exploit for their benefit any opportunity that should be deemed an asset of the corporation." Alexander & Alexander v. Fritzen, 147 A.D.2d 241, 542 N.Y.S.2d 530, 533 (1st Dept. 1989). "The obligation of loyalty implied by the relationship between an employee and his (her) employer rests upon the rule that a person who undertakes to act for another shall not in the same matter act for himself (herself)." Id. at 534. "A corporate opportunity is defined as any property, information, or prospective business dealing in which the corporation has an interest or tangible expectancy or which is essential to its existence or logically and naturally adaptable to its business." Greenberg, 206 A.D. 2d at 964, 614 N.Y.S.2d 825.
Defendants argue that these allegations fail to state a claim under either of the tests outlined above. They first contend that Plaintiff cannot meet the "tangible expectancy" test because Plaintiff's allegations concerning the likelihood of a contract with the DOD represent a mere hope, which is insufficient to state a claim. Plaintiff alleges that Bailey, while working for AMBC, "attended various meetings for the purpose of establishing a business relationship between Plaintiff and the U.S. Department of Defense[.]" Supp. Complt. at ¶ 52. Plaintiff hoped to sell the Department drug-testing equipment. Id."Plaintiff never developed a business relationship with the Department of Defense nor saw any business from Bailey's activities." Id. at ¶ 54. Premier got such a contract "after Bailey's termination." Id. at ¶ 55.
The Court agrees with the Defendants that these allegations do not state a claim that AMBC had a tangible expectancy of a business relationship with the Department of Defense. "A tangible expectancy is 'something much less tenable than ownership, but ... more certain than a desire or hope.' " Moser v. Devine Real Estate, Inc., 42 A.D.3d 731, 735, 839 N.Y.S.2d 843 (3d Dept. 2007) (quoting Alexander & Alexander, 542 N.Y.S.2d at 534-35 ). Plaintiff here admits that it did not have a business relationship with DOD, but simply hoped for a future one, and that the company never had any business relationship with DOD during Bailey's time with the company, either as employee or consultant. Plaintiff's argument that this expectancy of an agreement was more than a mere hope is unpersuasive. Plaintiff contends that AMBC sent Bailey to have numerous meetings with the Department of Defense, and intended and expected those meetings to lead to a contract. The fact that Premier secured a contract, Plaintiff contends, is evidence of Plaintiff's tangible expectancy. The Court disagrees. Plaintiff's argument describes a hope that business meetings would lead to a contract. A hope is not a tangible expectancy.
Defendants next argue that Plaintiff has not pled facts sufficient to meet the essential element test. To satisfy that test, a plaintiff must allege that "the opportunity ... was 'necessary' for or 'essential' to its business such that 'the consequences *161 of deprivation are so severe as to threaten the viability of the enterprise.' " Moser, 42 A.D. 3d at 735, 839 N.Y.S.2d 843 (quoting Alexander & Alexander, 542 N.Y.S.2d at 534). The Court finds that Plaintiff has not stated a plausible claim in this respect either. Plaintiff nowhere alleges that failing to obtain the DOD contract that went to Premier threatened the viability of the enterprise. As such, Plaintiff has not alleged facts sufficient to support a diversion of corporate opportunity claim.[3]
d. Tortious Interference
Defendants also argue that Count 8, which alleges tortious interference in a contract between Peckham and Bailey interference by Bailey and Premier, is futile. In New York, a party proves tortious interference with contract by showing "(1) a valid contract between the plaintiff and a third party; (2) the defendant's knowledge of that contract; (3) the defendant's intentional procurement of the third party's breach of that contract; and (4) damages." Iacono v. Pilavas, 125 A.D.3d 811, 812, 4 N.Y.S.3d 250, 252 (2d Dept. 2015) (citing Flushing Expo, Inc. v. New World Mall, 116 A.D.3d 826, 985 N.Y.S.2d 247 (2d Dept. 2014) ). Defendants argue that the Court has already found that no contract existed between Peckham and Plaintiff, and therefore no tortious interference claim could lie. Plaintiff does not respond to this argument.
The Court agrees that the proposed pleading would be futile in this respect. A tortious interference claim requires the existence of a contract, and Plaintiff has not alleged any such agreement with Peckham. The Court will deny Plaintiff's motion as it relates to this claim.
e. Unjust Enrichment
Finally, Defendants argue that Plaintiff's attempt at pleading a claim for unjust enrichment against Bailey and Premier in Count 9 is also futile. They argue that Plaintiff has not alleged that Defendants received something of value which belonged to Plaintiff, and the claim must therefore fail. Moreover, Plaintiff has not alleged that Defendant Bailey profited from the alleged unjust enrichment. Bailey did not make any contract with the Michigan DOC, and he is not legally responsible for the money paid to Premier, a corporation.
In New York, a claim for unjust enrichment requires a showing that " '(1) the defendant was enriched, (2) at the plaintiff's expense, and (3) that it is against equity and good conscience to permit the defendant to retain what is sought to be recovered.' " GFRE, Inc. v. U.S. Bank, N.A., 130 A.D.3d 569, 570, 13 N.Y.S.2d 452, 454 (2d Dept. 2015) (quoting Mobarak v. Mowad, 117 A.D.3d 998, 1001, 986 N.Y.S.2d 539 (2d Dept. 2014) ). "Such *162 a claim is undoubtedly equitable and depends upon broad considerations of equity and justice." Paramount Film Distributing Corp. v. State, 30 N.Y.2d 415, 421, 334 N.Y.S.2d 388, 393, 285 N.E.2d 695 (1972). Courts consider "if a benefit has been conferred on the defendant under mistake of fact or law, if the benefit still remains with the defendant, if there has been otherwise a change of position by the defendant, and whether the defendant's conduct was tortious or fraudulent." Id. Such a claim, however, "is not a catchall cause of action to be used when others fail." Corsello v. Verizon, N.Y., Inc., 18 N.Y.3d 777, 790, 944 N.Y.S.2d 732, 967 N.E.2d 1177 (2012). The tort applies "only in unusual situations when, though the defendant has not breached a contract nor committed a recognized tort, circumstances create an equitable obligation running from the defendant to the plaintiff." Id. Unjust enrichment applies when "the defendant, though guilty of no wrongdoing, has received money to which he or she is not entitled." Id. Such a claim cannot serve to "[duplicate] or [replace], a conventional contract or tort claim." Id.
Count 9 of the prosed pleading alleges that Bailey, Premier, and Peckham combined to "[submit] a proposal to supply drug test kits to DOC, to the exclusion of Plaintiff[.]" Supp. Complt. at ¶ 120. Defendants' and Premier's actions led those three to be awarded a contract worth more than $1.8 million, "and Plaintiff to be denied the same." Id. Plaintiff further alleges that AMBC "made significant investments of time, effort, and money over a period of years to ensure that Peckham was suitably prepared to package and distribute products to DOC as required under the contract[.]" Id. at ¶ 121. These "investments" are what qualified Peckham to obtain the "worthy supplier" status necessary to obtain the contract. Id. Under those circumstances, Plaintiff alleges, "[e]quity and good conscience dictate that Defendants ... should not be permitted to retain the significant gains of the contract award," which came at "Plaintiff's expense." Id. at ¶ 122.
The Court agrees with the Defendants that such allegations fail to state a claim for unjust enrichment. New York courts have defined the "essence" of unjust enrichment as a situation where "one party is in possession of money or property that rightly belongs to another." Clifford R. Gray, Inc. v. LeChase Constr. Servs., LLC, 31 A.D.3d 983, 819 N.Y.S.2d 182, 187 (3d Dept. 2006). Here, the Plaintiff alleges that, due to the Defendants' misconduct, a bid that should have been prepared by Plaintiff and Peckham was prepared by Premier and Peckham. The money and property that rightly belonged to Plaintiff that Defendants received, Plaintiff alleges, was the contract payment from the Michigan DOC. Plaintiff's allegation is not that property that was rightly Plaintiff's ended up in Defendants' hands. Instead, Plaintiff's allegation is that Defendants interfered in the process of bid preparation between Peckham and Plaintiff. The money that came from that bid process could not be considered the property of anyone but the Michigan DOC until the contract was awarded and paid out. Plaintiff's claim here is essentially an attempt to state a tort claim in equity. Plaintiff alleges Defendants improperly used Plaintiff's knowledge to construct a winning bid. As explained, however, unjust enrichment occurs when "the defendant, though guilty of no wrongdoing, has received money to which he or she is not entitled." Corsello, 18 N.Y.3d at 790, 944 N.Y.S.2d 732, 967 N.E.2d 1177. Such a claim cannot serve to "[duplicate] or [replace], a conventional contract or tort claim." Id.
*163 The Court therefore agrees with Defendants that Plaintiff's proposed pleading would be futile with respect to the unjust enrichment claim. The Plaintiffs motion will be denied in this respect.
f. Conclusion as to the Motion to Amend/Supplement
As explained above, the Court finds that, Plaintiff's proposed Supplemental/Amended Complaint states claims upon which relief could be granted with respect to Plaintiff's breach of contract claims in Counts 1 and 2 and misappropriation of trade secret claims in Counts 5 and 6. All the other proposed claims are futile. The Plaintiff's motion will therefore be granted in part and denied in part. As the Court has concluded that all of the proposed claims against Defendant Premier are futile, the Court will dismiss the case against that Defendant.
C. Defendants' Motion to Dismiss
Defendants have moved to dismiss Plaintiff's original Complaint. As the Court has found that Plaintiff should be permitted to supplement/amend the original complaint as discussed above, the original complaint is no longer the operative pleading. The Defendants' motion to dismiss is now moot. Moreover, the Court has considered the arguments that Defendants make regarding each of the claims in the original complaint in deciding Plaintiff's motion. The Court finds that Defendants' arguments regarding the breach-of-contract and misappropriation of trade secrets claims that remain in the complaint are unpersuasive with respect the original Complaint as well. The Court will therefore deny the Defendants' motion as moot.
IV. CONCLUSION
For the reasons stated above, the Plaintiff's motion for reconsideration and for leave to supplement/amend the Complaint, dkt. # 39, is hereby GRANTED in part and DENIED in part, as follows:
1. Plaintiff's motion for reconsideration is hereby GRANTED in that the Court finds that personal jurisdiction as to Defendant Premier Biotech, Inc., is uncontested;
2. Plaintiff's motion to supplement/amend is granted with respect to Plaintiff's Claims in Counts 1, 2, 5, and 6 of proposed pleading; and
3. Plaintiff's motion to supplement/amend is DENIED is all other respects. The Court finds that supplementing or amending the Complaint to permit those other claims would be futile.
Defendant Todd Bailey's motion to dismiss the original pleading, dkt. # 38, is DENIED as moot.
Plaintiff shall file an Amended Pleading in the form proposed in Plaintiff's motion, but which includes only the claims against Defendant Todd Bailey, within 14 days of the date of this Order. Defendant shall answer the Amended Complaint within 21 days of the date upon which Plaintiff files the pleading. As a result of the Court's decision, Defendant Premier Biotech, Inc., is hereby DISMISSED from the case.
IT IS SO ORDERED

The parties offer no argument concerning a claim for breach of duty of loyalty, even though Plaintiff's claim mentions that tort. New York courts hold that an employee or agent "is prohibited from acting in any manner inconsistent with his agency or trust and is at all times bound to exercise the utmost good faith and loyalty in the performance of his duties." Lamdin v. Broadway Surface Advertising Corp., 272 N.Y. 133, 138, 5 N.E.2d 66 (NY 1936). If "the employee engages in business which, by its nature, competes with the employer's a double breach of duty occurs. 'Not only is the principal deprived of the services for which he has contracted, but he finds these services turned against himself.' " Maritime Fish Products, Inc. v. World-Wide Fish Products, Inc., 100 A.D.2d 81, 474 N.Y.S.2d 281 (1st Dept. 1984) (quoting Reis & Co v. Volck, 151 App. Div. 613, 615, 136 N.Y.S. 367 (1st Dept. 1912) ). Plaintiff's claim here fails. The allegations indicate that Premier did not engage in business with DOD until Bailey left Plaintiff's employ, a point at which he no longer had a duty of loyalty to his former employer.